HOSEA S. BALLOU *vs.* UNITED BUTTON COMPANY.

Hampden.     February 27, 1922. — June 7, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Broker,* Commission.  *Agency,* Existence of relation, Agent's commission.

At the trial of an action against a corporation for a commission alleged to have been earned in procuring a purchaser able, ready and willing to buy real estate of the defendant, there was evidence warranting findings that the president of the corporation, at a time when the corporation was in the hands of receivers, of whom the president was one, and was restrained from selling or disposing of any of its property, said to the plaintiff that he wanted "to sell the property to get the proceeds in meeting the obligations 'of the corporation," and asked the plaintiff "to try again to find a buyer;" that nothing was then said about the price, terms, or commission, but the plaintiff knew that the property was subject to mortgages and leases; that the plaintiff had correspondence with the president as receiver, stating that he had a possible buyer in view, and was told that the sale of the real estate was "not up to the receivers" then, but that, if it should arise, the plaintiff would be advised; that later the plaintiff communicated an offer from the prospective purchaser to the president, which the president said the receivers could not entertain because of outstanding mortgages and leases, and suggested that the plaintiff communicate with the corporation's attorney; that an interview then was had between the plaintiff, the prospective purchaser and the defendant's attorney, at which the attorney stated that any sale would have to be conditional on the approval of the defendant's directors, the consent of the United States District Court, and the reorganization agreement, as well as contingent upon the leases.  At a meeting of the defendant's directors, the offer of the prospective purchaser was accepted conditional upon the execution of a contract of sale which should be approved by counsel of the defendant company, and which would bind a reorganization board to consummate the sale if and when the property should be acquired from the receivers.  These conditions and the facts that the directors could not authorize nor the defendant enter into a contract, and that the receivers were powerless in the matter and that the defendant "looked with favor upon this proposition" were communicated to the plaintiff by the defendant's attorney, and neither the plaintiff nor the purchaser were informed otherwise of the vote.  No sale was consummated.  A verdict for the defendant was ordered.  *Held,* that

(1) The contract of employment was that the plaintiff should bring about a sale of the property and he never did so;

(2) Even assuming that it could be found from the evidence that the contract was that the plaintiff should procure a purchaser able, ready and willing to buy the property, as declared on, it plainly was with the understanding that the terms should be satisfactory to the defendant; and the plaintiff never produced a purchaser willing to buy the property on terms that the defendant was able and willing to agree to;

(3) The verdict for the defendant properly was ordered.

CONTRACT for a commission alleged to have been earned in procuring a purchaser of real estate of the defendant. Writ dated November 27, 1917.

In the Superior Court, the action was tried before *Fessenden*, J.

The vote of the directors of United Button Company of November 9, 1916, referred to in the opinion, was as follows:

"Resolved, that it is the sense of this board of directors that the offer of Brown & Adams, received through Messrs. H. S. Ballou & Co. as brokers, for the purchase of the Boston property, be accepted upon the following terms.

"Purchase price $100,000. — all cash.

"The property to be free and clear of mortgages and free and clear of all leases.

"The sale covers the land, buildings and sprinkler equipment, and excludes all tools, machinery and fixtures appurtenant thereto.

"It is understood that the commission to Messrs. H. S. Ballou & Co. is 2½ %, or $2,500.

"It is further resolved that Henry J. Lemmer, secretary of this corporation, be authorized to execute a contract for the sale of this property upon the above terms, when such contract shall have been approved by Messrs. Latson & Tamblyn as counsel to this company, the contract in question to be so drawn that it will obligate the board created under the agreement of May 6, 1916, or its successors or representative, to consummate the sale if and when the property be acquired from the receivers."

The words, in the above vote, "Board created under the agreement of May 6, 1916," refer to the provisions of an agreement of that date signed by certain persons who owned stock and bonds of the defendant company whereby the deposit of such securities with the Banker's Trust Company of New York was provided for and a certain committee or board was constituted, known as a

reorganization board, that had certain authority over these securities for the purpose of effecting a readjustment of the securities of the company in the nature of a new bond issue and a new stock issue.

There was no evidence that this vote was ever communicated to the plaintiff or to Jacob F. Brown unless (as the plaintiff contends), the following letter constituted such communication. On November 9, 1916, Mr. Latson, the defendant's attorney, directed a letter to the plaintiff as follows: "Gentlemen: The proposition submitted by you on behalf of your clients, Messrs. Brown & Adams, for the purchase of the Boston property of United Button Company, was considered to-day by the Board of Directors. The Board has no power to act in the premises, as it cannot authorize a contract, nor can the United Button Company enter into a contract. As previously pointed out, the Receivers are likewise powerless in the matter. The Board looked with favor upon this proposition, but it remains to be seen whether counsel can devise an appropriate contract covering the situation, and to this end I shall be glad to come to Boston if you will arrange an appointment with counsel to your clients. Yours very truly, Almet Reed Latson."

Other material evidence is described in the opinion. The jury answered affirmatively a special question, "Did Mr. Porter, as president of the United Button Company, on the fifth day of October, 1916, in the United States District Court in Boston, say to the plaintiff that he (Porter) wanted to sell the property to get the proceeds in meeting the obligations of the corporation, and did he ask him to try again to find a buyer, and did the plaintiff say that he would try to do so?"

By order of the trial judge, a verdict was returned for the defendant and, at the request of the parties, the action was reported to this court for determination, it being agreed that, if the verdict for the defendant was ordered rightly, judgment should be entered on the verdict; otherwise, judgment should be entered for the plaintiff in the sum of $2,500 with interest from the date of the writ and costs.

The case was submitted on briefs.

*H. W. Ely, J. B. Ely & W. C. Giles,* for the plaintiff.

*C. H. Beckwith,* for the defendant.

DE COURCY, J.  The plaintiff, a real estate broker, brought this action to recover a commission, alleging that he was employed by the defendant to procure a purchaser of certain real estate for the sum of $100,000, and that he did procure a purchaser upon the terms mentioned.  The trial judge directed a verdict for the defendant, and reported the case to this court.

In order to determine what the contract of employment was, and whether the plaintiff performed his part, it is necessary to recite the essential facts as the jury could find them on the evidence.  On October 5, 1916, the District Court of the United States appointed receivers for the defendant company and restrained it from selling or disposing of any of its property.  The real estate involved in this case was on A Street in South Boston, and was encumbered with three mortgages and several leases. On that day the plaintiff met William A. Porter, who was president of the defendant and also one of the receivers, in the District Court.  Porter said he wanted "to sell the property to get the proceeds in meeting the obligations of the corporation," and asked the plaintiff "to try again to find a buyer."  Nothing was then said about the price, terms, or commission; but the plaintiff knew that the property was subject to mortgages and leases.  On October 7, the plaintiff wrote to "William A. Porter, Receiver," that he had a possible buyer in sight, and asked to be advised of "your present asking price, subject to usual commission if we effect sale."  Porter replied on October 13, "The matter of selling any Real Estate is not up to the Receivers at the present time but if that question should arise you will be advised."  On October 19 the plaintiff wrote that he had a new prospective buyer, who desired a plan of the real estate, and a list of the tenants, rentals, and dates when leases expire.  On October 27 he reported to Porter as co-receiver, that this buyer offered $100,000 cash for the property "free of leases, and free of Mortgage encumbrance, the U. B. Co. to have the privilege of selling separately and removing the tank, engine, boilers, and all machinery except sprinkler system, and you pay taxes of course, for current year, and our commission;" the buyer to take possession January 1, or at latest April 1, for his own use.  Porter replied on November 1, that the receivers could not entertain the offer, because of the mortgages which covered this and other property; and recommended

the plaintiff to take the matter up with Mr. A. R. Latson of New York, the attorney for the United Button Company. The plaintiff thereupon wrote to Latson: and a personal interview was arranged, and held in Boston on November 6. The plaintiff's customer (Brown) was present; and Brown refused to increase his offer and insisted that the building must be free from leases and that possession be given him by April 1. Latson said that any sale would have to be conditional on the approval of the defendant's directors, the consent of the District Court, and the reorganization agreement, as well as contingent upon the leases.

The directors of the defendant company met on November 9. The plaintiff relies mainly on the vote then passed as an acceptance of said offer of purchase. But in addition to the fact that this vote was not communicated to the plaintiff, and that the restraining order of the District Court was still in force, there is the further answer to this claim that the vote did not constitute an acceptance of the terms offered by the plaintiff. It was expressly conditional upon the execution of a contract of sale which should be approved by Messrs. Latson and Tamblyn as counsel of the defendant company, and which would bind the reorganization board to consummate the sale if and when the property should be acquired from the receivers. Mr. Latson in his letter to the plaintiff of the same date explained that the directors could not authorize nor the defendant enter into a contract, and that the receivers were powerless in the matter. He added "The board looked with favor upon this proposition, but it remains to be seen whether counsel can devise an appropriate contract covering the situation," and expressed a willingness to come to Boston for that purpose.

Efforts to reach a satisfactory agreement were continued, but without success. The main obstacle was the Terkelson and Wenberg lease, which would not expire until February 1, 1919. Brown, the prospective purchaser, would not accept the property subject to this lease. All the parties attempted in good faith to induce these tenants to surrender their lease and accept other premises, and sought otherwise to negotiate a satisfactory arrangement. Failing in this, no sale was effected.

It seems apparent that the contract of employment was that the plaintiff should bring about a sale of the property; and this

he never did. But assuming that it could be found from the evidence that the contract was that the plaintiff should procure a purchaser, able, ready and willing to buy the property, as declared on, it plainly was with the understanding that the terms should be satisfactory to the defendant. While the plaintiff's customer was ready to purchase on certain specified terms, the defendant never agreed to sell on those terms. In short, the plaintiff never produced a customer who was willing to take the property on terms that the defendant was able and willing to agree to. The verdict for the defendant was directed rightly, and in accordance with the report judgment is to be entered on the verdict.

*So ordered.*