RICHARD T. PULLEN *vs.* WILLIAM A. BALTZER.

Suffolk.   November 22, 1922. — January 5, 1923.

Present: RUGG, C.J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Contract,* Implied.   *Broker,* Commission.

At the trial of an action of contract upon an account annexed for "services rendered" and "work and labor performed in finding purchaser for entire capital stock" of a certain corporation, the evidence relative to the plaintiff's employment was in substance as follows: The plaintiff was president of another corporation. At a conference between him and the defendant in August of a certain year, the defendant asked the plaintiff to take up the matter of seeking a customer

for the shares, gave him financial data as to the corporation and suggested a possible purchaser and $15,000 as the price he wished to receive. The plaintiff said he would ask $16,000, the $1,000 excess to go to his corporation, and said, ". . . as a personal matter, if I put my personality into this matter and push it through, it is worth a consideration," to which the defendant replied, "I will be glad to pay 5 per cent on what I get, the $15,000." In cross-examination the plaintiff testified that the promises of payments by the defendant to him were "If the sale went through on the $16,000," and that the defendant "wanted" him "to find a purchaser," and in a letter to the defendant during negotiations with the customer whom the defendant had suggested, the plaintiff wrote: "should negotiations result favorably in closing the deal, I would naturally expect you to pay me a basis of say 5% on the figure you accept." During negotiations with a second customer not suggested by the defendant, the defendant withdrew the matter from the plaintiff. The next year the defendant sold the shares to a third person not procured by the plaintiff and in no way connected with those with whom the plaintiff had negotiated. A motion by the defendant that a verdict be ordered in his favor was denied, subject to his exceptions. A verdict for the plaintiff in the sum of $600 was returned. *Held,* that

(1) The reasonable construction to be placed on the evidence most favorable to the plaintiff was that the plaintiff was to be paid for his services only in case he effected a sale, or at least produced a customer who was able, ready and willing to purchase the defendant's shares on terms authorized by his contract of employment: the ordinary brokerage contract;

(2) The plaintiff was not entitled to recover on a *quantum meruit* for the services he rendered;

(3) The defendant had a right, acting in good faith, to revoke the authority of the plaintiff;

(4) It not being contended that the plaintiff was the efficient cause of the sale that was made, the defendant's motion should have been granted, and his exceptions were sustained.

CONTRACT, for services alleged to have been rendered by the plaintiff to the defendant in an effort to sell the defendant's shares of the capital stock of L. L. Bates Company. Writ dated March 7, 1919.

The third count of the declaration, which, as stated in the opinion, alone is material, was upon an account annexed, whose items were as follows:

"To services rendered and to work and labor performed
in finding purchaser for entire capital stock of L. L. Bates
Company to be paid to Richard T. Pullen to his own use     $750.00
to be paid to Richard T. Pullen in trust to the use of
Remington & Sherman Company .................... 1,000.00

Total.......$1,750.00

In the Superior Court, the action was tried before *Fox*, J. Besides the evidence described in the opinion, it appeared that in December, 1918, the plaintiff presented to the defendant for his signature a thirty-day option for a sale of the stock to Eagle Lock Company. The defendant, after consulting his attorney, refused to sign and stated to the plaintiff that he had decided to keep the business. The stock was sold in 1919 to the York Safe and Lock Company, between which and the Eagle Lock Company there was no connection. The sale price was $25,000 and no commission was paid.

Other material evidence is described in the opinion. At the close of the evidence, the judge denied a motion by the defendant for a verdict in his favor and, subject to exceptions by the defendant, charged the jury in part as follows:

"Now the question is, is there any theory upon which Mr. Pullen can recover for services he has rendered? It is quite true, as has been suggested by counsel that where a broker works on a commission basis, that employment is inconsistent with the theory that if he does not succeed in effecting a sale he can still recover something for services rendered. If a broker fails in effecting a sale or making a deal, he has n't earned anything, if those were the terms of his employment, — the employment of a broker on the commission basis. But you are not obliged to accept the story of one person or another when they are in conflict. It is for you to determine; I cannot rule as a matter of law that there may not be some theory of the evidence upon which you may not find for Pullen. Not being employed as a broker — as a matter of fact it appears he was president of a lock and safe company, his business was not that of a broker, but he was consulted, I assume, upon the theory that he had some knowledge of the sort of business in which Baltzer was engaged, and it appears that he had dealings with other concerns of that character. Is there any theory upon which you may find that Pullen, without being employed as a broker on a commission basis, was still requested to perform services for Baltzer with the fair understanding between the parties that he should be paid for those services, having regard for the sort of man he was and the time spent, whether he succeeded in accomplishing anything for Baltzer or not? And if so, the third count in this declaration is framed to authorize you to find something for the

plaintiff upon that theory, — fair compensation for the services which he rendered at the request of the defendant, — I leave the question to you. Of course if you find there was no arrangement that Baltzer should pay him anything for the services, or if you find that he was not requested by Baltzer to render any services impliedly with the understanding that he should be compensated for his services, then you must bring in a verdict for the defendant on that count. If you find that the only employment between them was that he should be employed as a broker on a commission basis, as Mr. Pullen says, why, then, as I say, that employment as a broker on a commission basis is not consistent with the theory that he can get anything if he does not succeed, and then you must find a verdict for the defendant.

"I leave the questions for your consideration."

The jury found for the plaintiff in the sum of $600; and the defendant alleged exceptions.

The case was submitted on briefs.

*F. H. Stewart, F. H. Chase & W. A. Buie,* for the defendant.

*R. S. Wilkins,* for the plaintiff.

DE COURCY, J. The first two counts in the declaration are for the recovery of a certain sum as commission for finding a purchaser of the capital stock of the L. L. Bates Company, all of which was owned by the defendant, Baltzer. The trial judge directed a verdict for Baltzer on these counts; and the correctness of that ruling is not now before us. The jury returned a verdict for the plaintiff on the third count; which is upon an account annexed for services rendered and work and labor performed. The main exception of the defendant is to the refusal of the judge to direct a verdict for him on this count.

There was evidence on which the jury could find these to be the facts: The plaintiff was president of the Remington and Sherman Company, manufacturers of bank vaults, safes etc. In July, 1918, he was informed that the defendant would like to dispose of his business. A conference between them was arranged, and was held at Boston on August 27. Baltzer asked the plaintiff to take up the matter; gave him data as to the assets and liabilities of the L. L. Bates Company; suggested the Sargent and Greenleaf Company as a possible buyer; and said he wanted $15,000 for his stock. The plaintiff said he would ask $16,000, the excess to go to the

Remington and Sherman Company. He then said: "Mr. Baltzer, as a personal matter, if I put my personality into this matter and push it through, it is worth a consideration." To this the defendant replied, "I will be glad to pay 5 per cent on what I get, the $15,000." In the cross-examination of the plaintiff appear these questions and answers: Q. "Do you say that he promised you $1,000 for your company and $750 for you?" A. "If the sale went through on the $16,000, yes." — Q. "Your contention is that Mr. Baltzer had employed you to find a possible purchaser for his business, isn't it?" A. "He wanted me to find a purchaser, yes." Subsequent to this interview, the plaintiff wrote to the defendant with reference to his negotiations with Sargent and Greenleaf; and in the letter he stated: "should negotiations result favorably in closing the deal, I would naturally expect you to pay me a basis of say 5% on the figure you accept."

The reasonable construction to be placed on the testimony most favorable to the plaintiff is, that under the agreement between him and the defendant he was to be paid for his services only in case he effected a sale, or at least produced a customer who was able, ready and willing to purchase the stock of the L. L. Bates Company on terms authorized by his contract of employment. The first two counts were based upon this theory. As above stated, the question whether the plaintiff had a right to go to the jury on these counts is not before us. But the agreement between the parties being the ordinary brokerage contract, the plaintiff was not entitled to recover on a *quantum meruit* for the services he rendered. As was said in *Cadigan* v. *Crabtree*, 179 Mass. 474, 480: "A brokerage commission is earned if the broker, without devoting much, or any, time to hunting up a customer, succeeds in procuring one; and it is equally true, on the other hand, not only that no commission is earned if a broker is not successful, but a broker is not entitled to any compensation, no matter how much time he has devoted to finding a customer, provided a customer is not found." *Noyes* v. *Caldwell*, 216 Mass. 525. *Ballou* v. *United Button Co.* 241 Mass. 457. The defendant had a right, acting in good faith, to revoke the authority of the plaintiff; and it is not contended that Pullen was the efficient cause of the subsequent sale to the York Safe and Lock Company. *Leonard* v. *Eldridge*, 184 Mass. 594.

The exceptions to evidence have not been argued, and need not be considered. The defendant's motion for a directed verdict on the third count should have been granted.

*Exceptions sustained.*