S. Osborn Ball *vs.* Eugene A. Williamson & another.[1]

Barnstable. October 10, 1957. — December 18, 1957.

Present: Wilkins, C.J., Williams, Counihan, Whittemore, & Cutter, JJ.

*Broker*, What constitutes relation, Commission. *Contract*, Implied. *Practice, Civil*, Auditor: objections to report, recommittal.

Objections to the report of an auditor whose findings are not final have no standing except as the foundation of a motion to recommit to the auditor. [551]

The disposition of a motion to recommit to an auditor rests in the sound discretion of the court. [551]

A landowner, the defendant in an action by a broker, did not incur contractual liability to the plaintiff based on any employment of him where it appeared that the defendant indicated to the plaintiff and other brokers a willingness to receive offers for his land, making it clear to them that the suitability of offerors as neighbors was a matter of im-

[1] His wife, Mary P. Williamson.

portance; that advice of an offer and execution of a sale and purchase contract by a customer of the plaintiff and similar advice respecting a customer of another broker reached the defendant at about the same time; and that the defendant, without bad faith, accepted the offer of the other broker's customer, who the defendant knew was suitable as a neighbor and who had actually made a deposit, whereas the defendant did not know whether the plaintiff's customer would be suitable and that customer's deposit was to be made only upon execution by the defendant of the contract with him. [552]

CONTRACT. Writ in the Superior Court dated July 28, 1953.

The action was heard by *Beaudreau, J.,* on an auditor's report.

*S. Osborn Ball,* pro se.

*Kenneth E. Wilson,* for the defendants, submitted a brief.

COUNIHAN, J.   In this action of contract the plaintiff, who is an assignee of his wife, Ethel, seeks to recover a commission for procuring a customer for certain real estate in Truro formerly owned by the defendants or in quantum meruit for services in the sale of said real estate.[1]   The action was referred to an auditor whose findings of facts were not to be final.   After the filing of the auditor's report neither party filed a statement insisting upon a jury trial and neither party reserved the right to introduce evidence other than the report.   The judge heard the case without jury upon the auditor's report only.   Rule 88 of the Superior Court (1954).   The action comes here principally upon the plaintiff's exception to the allowance of the defendants' motion for judgment for the defendants upon the auditor's report.   There was no error.

Pertinent facts found by the auditor are as follows: Ethel Archer Ball, the wife of the plaintiff, was engaged in the real estate business in Provincetown.   On April 15, 1952, the male defendant, hereinafter called the defendant, wrote to her soliciting offers for the purchase of the Truro real estate.   He fixed his asking price at $23,500 but requested that any offer reasonably close be submitted.   He further

---

[1] We have been informed that the first count in the declaration was waived by the plaintiff.

added, "Much consideration will be given to the type of purchaser involved, since we have the greatest consideration for the people in the neighborhood and the buyer must be an acceptable type."

At the same time the defendant wrote a similar letter to other brokers in the vicinity of Truro. Mrs. Ball was aware that other brokers were soliciting offers. On September 2, 1952, the defendant wrote her again saying, "should you find a financially able buyer . . . who will pay a price to net me, after commission is paid, $17,500 and if you feel the buyer is of the right type for the neighborhood, *please advise me. . . . I'm still trying to find a compatible neighbor for the Wilson's and Lowrie's*" (emphasis supplied).

In the summer of 1953 Mrs. Ball interested people named Manning in this real estate. On July 9, 1953, the defendant by letter to Mrs. Ball declined an offer of $14,000 net but added that he *would consider* an offer of $18,000 net. Mrs. Ball continued negotiations with the Mannings who subsequently signed a purchase and sale agreement dated July 21, 1953, in the usual form, agreeing to pay $18,000 for the property and to assume payment of the commission. On the same day the plaintiff mailed a copy of the agreement to the defendant with a letter in which he said, "*If agreeable* [emphasis supplied] then, will you and Mrs. Williamson sign both copies . . . and return me one completed copy; whereupon I will send check to [you for] the usual ten (10%) per cent deposit." Up to that time the defendant did not know and had not notified Mrs. Ball that the Mannings would be acceptable buyers. Mrs. Ball on the same day at about 11 a.m. telephoned the defendant's home in New Jersey and in the absence of the defendant talked with Mrs. Williamson. Mrs. Ball told her of the offer and the proposal to deposit $1,800 upon the receipt of the signed agreement. Mrs. Williamson expressed herself as pleased and said she would tell the defendant when he returned home from a trip. It is plain from the auditor's report that the defendant conducted all negotiations with Mrs. Ball for the sale of this real estate.

The auditor expressly found that the telephone call referred to and the purchase and sale agreement of the Mannings were not brought to the attention of the defendant until July 23, 1953. In the meantime one Kane, another broker, on July 21, 1953, telegraphed the defendant "confirming" a sale to a customer who agreed to pay the defendants' price. On July 23, 1953, Kane again telegraphed the defendant that a purchase and sale agreement from his customer was in the mail and that a check from Kane for ten per cent of the purchase price had been wired him. This agreement was signed by a Mr. and Mrs. Kahn. The price was set out as $19,000 with a deposit of $1,900.

The letter from Mrs. Ball and the telegrams from Kane were brought to the attention of the defendant on July 23 at about the same time. The defendant at that time "knew" that the Kahns would be acceptable neighbors, having been so informed by one of the adjoining property owners. The defendant accepted the Kahn offer and on July 27, 1953, notified Mrs. Ball to that effect.

The auditor expressly found that the defendant in accepting the Kahn offer considered the acceptability of the Kahns and also that they had made an actual deposit of $1,900 whereas he had no knowledge that the Mannings would be acceptable as desirable neighbors and their agreement only provided that a deposit on the purchase price would be made when the agreement was signed and returned to Mrs. Ball.

The plaintiff in his bill of exceptions alleges errors in the action of the judge in disposing of several matters prior to the allowance of the motion for judgment. One of these is the denial of a motion to certify that certain exhibits may be considered by this court without reproducing them in the record. Rule 6 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 696. However, all of the material exhibits are incorporated in whole or in part in the auditor's report and therefore are before us. Other alleged errors are the failure of the judge to act upon objections of the plaintiff to the auditor's report, the

denial of a motion to strike certain parts of the auditor's report and of a motion to recommit the report, and the failure of the judge to act upon certain requests for rulings of law.

Without discussing each of them in detail it is enough to say that none of these exceptions has any merit. There is no report of the evidence before the auditor in the record so that "the general finding of the auditor must stand." *J. W. Grady Co.* v. *Herrick*, 288 Mass. 304, 310. Furthermore the plaintiff offered no evidence before the judge to contradict the findings of the auditor. G. L. (Ter. Ed.) c. 221, § 56. The requests for rulings involved mixed questions of law and fact, and it is important to note that these requests were presented to the auditor and the record does not show that they ever were brought to the attention of the judge.

The judge was not wrong in failing to act upon the plaintiff's objections to the auditor's report. Such objections have no purpose other than that of laying a foundation for a motion to recommit and action upon such a motion rests in the sound discretion of the judge. *Packard* v. *Reynolds*, 100 Mass. 153. *J. W. Grady Co.* v. *Herrick*, 288 Mass. 304, 310. *Staples Coal Co.* v. *Ucello*, 333 Mass. 464, 466–467.

The judge was right in ordering the entry of judgment for the defendants. "An auditor's report is prima facie evidence upon such matters as are embraced in the order of reference. G. L. (Ter. Ed.) c. 221, § 56. When it is the only evidence introduced, it cannot be disbelieved as may the uncontradicted evidence of a witness; it warrants and may even require a judgment in accordance with its conclusion." *Ballou* v. *Fitzpatrick*, 283 Mass. 336, 338. *Lovell* v. *Commonwealth Thread Co. Inc.* 280 Mass. 243. *Savin* v. *Block*, 297 Mass. 487, 489. *Conte* v. *Mizzoni*, 298 Mass. 463, 465. *Knapp* v. *Amero*, 298 Mass. 517, 522. See *Cook* v. *Farm Service Stores, Inc.* 301 Mass. 564.

The report of the auditor discloses no evidence of bad faith on the part of the defendant and the judge by his allowance of the motion for judgment presumably found none.

The case before us is analogous to *Cronin* v. *National Shawmut Bank*, 306 Mass. 202, although in that case no broker's commission on the sale of real estate was involved. At page 210, in holding that the defendant had not employed a broker and hence was not obligated to pay him a commission, it was said, "A mere indication of a willingness to receive proposals is not an offer which can ripen into a contract upon the submission of a proposal."

The report of the auditor in the instant case shows that the defendant merely sought proposals from brokers and falls short of proving that the defendant employed the plaintiff's wife. On the contrary the report indicates that the defendant at all times in dealing with Mrs. Ball took great pains to reserve the right to consider all offers, and particularly the suitability, a matter of personal acceptability, of the persons making an offer. In these circumstances, until an offer was in fact accepted, the defendant came under no contractual liability based upon any express or implied employment of the broker to accomplish a specific purpose which is the basis of liability for a commission.

There is also no basis for recovery upon quantum meruit where, as in the present case, a seller merely requests the submission of offers, reserving the right to reject all offers not in strict compliance with the proposal to the broker to submit offers. There is nothing from which can be implied an undertaking to pay for the efforts of Mrs. Ball to obtain an offer which might or might not be accepted. Moreover, even if the plaintiff's wife had been expressly employed as a broker and had failed to meet the terms of her employment, there could be no recovery in quantum meruit. *Pullen* v. *Baltzer*, 243 Mass. 419, 421. *Elliott* v. *Kazajian*, 255 Mass. 459, 461–462.

*Exceptions overruled.*