Lester KIGER, Plaintiff-Respondent,

v.

TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, Defendant-Appellant.

No. 46370.

Supreme Court of Missouri, Division No. 1.

March 10, 1958.

George P. Mueller, St. Louis, Evans & Dixon, John P. Montrey, St. Louis, for (defendant), appellant.

Charles E. Gray, St. Louis, Terry, Jones & Welton, Kansas City, for (plaintiff) respondent.

HOLMAN, Commissioner.

Plaintiff, Lester Kiger, was injured while at work for the defendant on February 4, 1956, when a refrigerator car door fell upon him as he attempted to close it. He was employed by the defendant as a carman, the specific job classification being "air hose couple-up man." This action to recover damages for his injuries was brought under the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. Section 51 et seq. A trial resulted in a verdict for plaintiff in the sum of $30,000. Defendant has appealed from the judgment entered thereon.

Plaintiff's case was submitted to the jury on the theory that defendant failed to warn plaintiff that the door was detached at the top, although one of its employees knew of that condition in time to have warned plaintiff thereof, and knew that the door was likely to fall if plaintiff came in contact with it. In addition to certain trial errors, defendant contends that the evidence was not sufficient to warrant the submission of plaintiff's case to the jury because (1) it is said that it was plaintiff's duty to inspect the car and hence he cannot complain that he was not warned of a defect which it was his duty to discover by inspection, and (2) since plaintiff observed some damage to the door, his negligence in not examining all of the door before attempting to move it was, as a matter of law, the sole cause of his injury.

Plaintiff testified that his main duties were to bleed the air from incoming trains

so that the cars could be switched, and to couple air hoses on the outgoing trains. He was also required to inspect interchange cars. As the name implies, those are cars that are brought into the yard by one railroad for delivery to another. Plaintiff also did some inspection work at the Lesperance Street yard on Sundays when he worked in the place of another employee who had that day off. Aside from the foregoing, he would make inspections only when requested by the foreman, yardmaster, or yard clerk who wanted an empty car for a shipper after the regular car inspector (who worked only on the day shift) had gone home. In the four years he had worked in the Tyler Street yard he had inspected about fourteen such cars.

It was plaintiff's testimony that on the night in question one of the yard clerks, Mr. York, told him there was a car door open on track 4 in Tyler Yard. The rules required that refrigerator car doors be closed before the car could be moved, and there seems to be no doubt but that it was a part of plaintiff's duties to close the door in question. Another airman, Mr. Hill, also worked on the shift (3 to 11 p.m.) with plaintiff. Shortly before 9:30 p.m., plaintiff and Hill left the yard shanty to close the door on the car in question. Plaintiff was one or two car lengths in front of Hill. When plaintiff arrived at the car he observed (by use of his flashlight) that the door appeared to have been sideswiped, as it was scratched and the rod on the right was bent a little. He then reached up and took hold of a lever used in opening and closing the door and the door immediately fell. The door, which weighed about 1,000 pounds, struck plaintiff in the back of the head, then across the shoulders and the small of his back, and the next thing he knew he was lying on the ground with the door across both his legs. Hill was able to free one leg and then obtained help so that the door could be lifted off of the other one. Plaintiff was able to walk and stayed in the shanty for about an hour until the end of his shift, at which time he went home. At 3 o'clock the next morning he awakened

and was suffering such intense pain that he had a neighbor drive him to the Missouri Pacific Employees Hospital. His injuries will be hereinafter described in connection with the consideration of defendant's contention that the verdict was excessive.

Plaintiff stated that his only intention was to close the door; that he wasn't going to inspect the car and did not look above the bottom half of the door. Mr. York, a witness for defendant, testified that he and another yard clerk, Freddie Meyer, went to the instant car earlier that day and removed a heater from the bunker. They noticed that the open door was damaged and that the top hanger on the north side appeared to be off. He said that ordinarily he would have closed the door but he didn't think he should touch this one. He stated further that he told plaintiff the door had been hit and asked him to look at it; that he didn't tell plaintiff the hanger was loose at the top. Also tending to show the condition of the door was the testimony of Hill who said it appeared to fall immediately after plaintiff reached up and touched it.

 We have concluded that there is no merit to the contention that plaintiff did not make a submissible case. In considering that question we are mindful that we view the evidence in the light most favorable to the plaintiff and disregard defendant's contrary evidence. Moreover, the Supreme Court of the United States has recently said, "Under this statute [F.E.L.A.] the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence." Rogers v. Missouri Pacific Railroad Co., 352 U.S, 500, 77 S.Ct. 443, 448, 1 L.Ed.2d 493.

Evidence favorable to plaintiff would reasonably support a finding that defendant (through its clerks) had knowledge of the fact that the top hanger on the north side was off and yet no warning as to the damaged condition of the door was given to plaintiff when he was told that the car door was open. It was not plaintiff's duty to inspect the car but it was his duty to close the door. The jury could reasonably have found that in the performance of that duty he was injured as a result of a condition which was known to defendant and about which plaintiff had not been warned. Under those circumstances the jury could reasonably have found that the failure of defendant to warn plaintiff was negligence and that his injuries resulted, in whole or in part, from such negligence. Terminal R. Ass'n of St. Louis v. Howell, 8 Cir., 165 F.2d 135.

Defendant, in support of its contention, relies primarily upon the case of Jaroszewski v. Central R. Co. of New Jersey, 9 N.J. 231, 87 A.2d 705. In that case the plaintiff was injured while he was in the performance of his duties as a car inspector when struck by a falling freight car door he had been attempting to close. Plaintiff asserted that the railroad was negligent in failing to make reasonable inspection of the car. Recovery was denied because of failure to prove negligence, as it appeared that defendant was in the performance of its duty to inspect when plaintiff was injured and that it was plaintiff's duty to discover the defect which caused his injury. It is obvious that the Jaroszewski case is readily distinguishable from the instant one, as plaintiff herein was not performing duties as a car inspector when injured, and in Jaroszewski there was no evidence to indicate that the railroad had prior actual knowledge of the defective and dangerous condition of the car.

Defendant has also cited the case of Hammond v. City of El Dorado Springs, 362 Mo. 530, 242 S.W.2d 479, 31 A.L.R.2d 1367. Therein plaintiff was an employee of an independent contractor engaged in repairing a water tower for defendant city and sought to recover for injuries sustained when an iron rod broke inside the tower. We held that the city was not liable because the injury resulted from a condition which the contractor had been engaged to repair and correct under the contract. That factual situation is so different from the one before us that it should be obvious the case has no application here.

■ Since we have indicated that the jury could reasonably have found that the defendant was guilty of negligence which played some part in producing the plaintiff's injuries, we think it would follow that the alleged contributory negligence of the plaintiff was not, as a matter of law, the sole cause of his injury. Moreover, it should be noted that (1) it was dark at the time and place of the occurrence, (2) the evidence does not indicate that plaintiff could see, from where he stood at the bottom of the door, that the hanger was off, and (3) there was no evidence that the damage observed by plaintiff would have caused the door to fall if he attempted to close it. In the situation presented it may not be said as a matter of law that plaintiff's alleged contributory negligence was the sole cause of his injury. Therefore, as indicated, we rule that the case was properly submitted to the jury.

■ Defendant next contends that the court erred in refusing Instruction C offered by it. That instruction directed a verdict for the defendant upon a finding that yard clerk York told plaintiff that there was a damaged car door on a certain track and that plaintiff went to the car to inspect the door for the purpose of arranging for repairs to said door, and that such was his duty, and that while he was making or about to make said inspection he was injured, etc. While we have decided that portions of the testimony of defendant's witnesses York and Hill are sufficient to support the facts submitted, we nevertheless have concluded that the instruction was not correct and hence the court properly refused it.

We have examined the cases cited by defendant and have the view that none of them support the giving of Instruction C under the factual situation here presented. It is said by defendant that the instruction submits the very defense outlined in Jaroszewski v. Central R. Co. of New Jersey, supra. We do not agree. As previously pointed out, the plaintiff there was making a routine car inspection and there was no evidence of any prior knowledge, on the part of the defendant, of the defective condition of the door. That is far different from the facts disclosed in the instant case. Here defendant's witness York stated that he had discovered that the top hanger of the door was off but that he did not tell plaintiff of that fact. Later developments demonstrated that the condition of the door was so dangerous that it was necessary only for plaintiff to touch a lever in order to cause it to fall. That York was aware of the dangerous situation is apparent from his testimony to the effect that he would ordinarily have closed the door but in view of the damage he didn't think "it should be touched" by him.

We do not think that a finding that plaintiff was in the act of discharging a duty to inspect a damaged door was sufficient to exonerate defendant from its duty to warn him of a *known* dangerous condition, under the facts and circumstances disclosed by the instant evidence. While no case has been cited which involves a factual situation exactly like the one before us, we think our conclusion is supported by the principles stated in Feldewerth v. Great Eastern Oil Co., Mo.App., 149 S.W.2d 410 [6] [7], and Terminal R. Ass'n of St. Louis v. Howell, supra.

■ Defendant's third point is that the court erred in admitting into evidence the following interrogatory and defendant's answer thereto: "No. 14, question, 'Please state whether at the time of the incident mentioned in plaintiff's petition, it was part of his duties to attempt to close the refrigerator car door mentioned in plaintiff's petition.' And the answer, 'Yes.'" De-

fendant objected on the ground that such required it to state its legal conclusion and invaded the province of the jury. In that connection it may be noted that there are situations in which it is held that evidence may be properly admitted even though it may indicate a conclusion. Streicher v. Mercantile Trust Co., Mo.Sup., 62 S.W.2d 461. However, we have the view that the instant answer did not constitute a conclusion but was a direct statement of fact. Most employees have well-defined duties assigned to them. That is particularly true as relates to railroad employees. The employer is the best source of information available as to the regular duties assigned to an employee. In the instant case there was an abundance of other evidence to indicate that it was plaintiff's duty to close all refrigerator car doors found open. If there had been any exception as to the door in question, by reason of the fact that it was damaged, the defendant could have so stated in its answer, as it was not required to limit its answer to a mere yes or no. As indicated, we have the view that the answer did not involve an expression of opinion or speculation but was a definite statement of fact which was clearly within the knowledge of the defendant. We rule this point against the defendant.

■ Defendant also contends that the court erred in giving plaintiff's Instruction No. 1 which directed a verdict for plaintiff upon a finding that prior to the casualty "defendant, through one of its employees, knew that said refrigerator car door was detached at the top on the north side thereof, and that by reason thereof, said door was likely to fall if plaintiff came into contact with said door in time thereafter to have warned plaintiff thereof; and if you find from the evidence that defendant, acting through its employees, failed to inform plaintiff that said door was so detached," etc. Defendant asserts that the instruction unduly limits the warning that would relieve it from liability. It is said that it required a warning that the door was detached at the top and did not permit the

jury to find that a warning that the door had been damaged was adequate. For all practical purposes we ruled that contention against defendant in our consideration of the court's refusal to give Instruction C. In that connection we stated that a finding that plaintiff had been told that the door was damaged, and that he went to inspect it, was not sufficient to relieve defendant of liability under the instant facts. There was no evidence that any other type of warning was given. The contention under consideration is without merit.

It is also said that Instruction No. 1 was erroneous because it ignored the defense that plaintiff was injured while inspecting the car. We have also ruled that contention against defendant in connection with our discussion of Instruction C. Since we have ruled that the fact that plaintiff may have been injured while making an inspection of the car door would not constitute a defense under the facts of this case, it should be obvious that, in any event, it was unnecessary for the instruction to refer to that issue.

■ The next point raised is that the court erred in giving Instruction No. 3 which told the jury that if it found that plaintiff was injured as a result of the negligence of the defendant, "then you are instructed that under the applicable law, plaintiff cannot be held to have assumed the risk of his employment, and you cannot find against plaintiff on the grounds that he assumed any risk involved by reason of such negligence of defendant, if any." It is said that the instruction was error because it injected a false issue into the case and had the effect of destroying defendant's submitted issue of contributory negligence. In support of its contention defendant relies primarily upon McCurry v. Thompson, 352 Mo. 1199, 181 S.W.2d 529. In that case the court held that it was error to give an instruction which submitted assumption of risk as a defense when such was not an issue. It is apparent that that case is no authority for a contention of error in giving the instant instruc-

tion which was given for the obvious purpose of keeping that issue out of the case. However, since the chief function of instructions is to inform the jurors as to the issues that are in the case, rather than to tell them the issues that are not, we think an instruction like the instant one should not be given, as a matter of routine, in every F.E.L.A. case. The giving or refusal of such an instruction should depend upon the evidence and trial situation in the particular case. Such an instruction is of a cautionary nature and is to be given or refused in the sound discretion of the trial court. Abernathy v. St. Louis-San Francisco Ry. Co., Mo.Sup., 237 S.W.2d 161; Reid v. Terminal Railroad Ass'n of St. Louis, Mo.App., 306 S.W.2d 630; Holmes v. Terminal R. Ass'n of St. Louis, 363 Mo. 1178, 257 S.W.2d 922; Curtis v. Atchison, T. & S. F. Ry. Co., 363 Mo. 779, 253 S.W. 2d 789. We have concluded that the court did not abuse its discretion in giving the instruction herein and hence this assignment is ruled against defendant.

■ Defendant also contends that the trial court erred in three instances in overruling its objections to the argument of plaintiff's counsel. In considering contentions of error in relation to the argument of counsel we have said, "The trial court, however, is allowed large discretion in permitting or restraining argument and as to the manner in which improper argument is to be restrained or its prejudicial effect purged or cleansed, and the appellate court will not interfere unless it clearly appears that the trial court has abused its discretion. [Citations omitted.] This is because a judge, present and presiding at a trial at the time an assertedly improper argument is made, is in a better position than we to gauge, in the circumstances surrounding a trial, the effect of counsel's remarks to a jury. It is recognized that in the stress of summing up the evidence and analyzing its probative effect in tending to support or refute the fact involved in a sharply contested factual issue, trial counsel's ardent advocacy sometimes impels him to go beyond

the limits of fair argument; but when the trial court does not consider such instances sufficient to require a new trial, this court is inclined to defer to the trial court's opinion in these matters, unless upon a full examination of the record it appears that the improper argument was so prejudicial, inflammatory and outside the record as to affect the result on the merits." Collins v. Cowger, Mo.Sup., 283 S.W.2d 554, 561.

■■■■■ The first instance referred to was the fact that plaintiff's counsel was permitted to comment adversely upon portions of the hospital record which was admitted upon being offered by plaintiff. Counsel criticized a statement that plaintiff had sustained "slight bruises and soreness" and another that plaintiff had been instructed to return to work on April 16, 1956. Cases such as Hayes v. Kansas City Southern Ry. Co., Mo.Sup., 260 S.W.2d 491, holding that a party may not impeach his own witness are cited by defendant. We do not consider those cases applicable. A party is not conclusively bound by the evidence of his witnesses (except his personal testimony) if he has other evidence to the contrary. There was evidence to indicate that plaintiff's bruises were more severe than "slight" and that he was actually not able to work when first instructed to do so. It may also be noted that plaintiff automatically became a member of the hospital association upon being employed by defendant. Under the circumstances we are unable to conclude that the court abused its discretion in permitting the argument noted. Mooney v. Terminal R. Ass'n of St. Louis, 353 Mo. 1080, 186 S.W.2d 450.

■■■■ We find no merit in defendant's contention that prejudicial error was committed by the court in overruling an objection to the following statement: "Now, you may feel, ladies and gentlemen, that plaintiff should have also shined the light up there but that does not excuse the conduct of this defendant from not warning him. The question is, did that failure to give the warning have anything to do with this accident." It would appear obvious that counsel was not attempting to state all of the requirements for a plaintiff's verdict as detailed in Instruction No. 1. Moreover, in ruling upon the objection, the court made a statement which would indicate to the jury that the court's instructions would prevail over statements of counsel. We do not think the jury would have been misled by the quoted statement.

■■■ Complaint is also directed to the argument of plaintiff's counsel as illustrated by the following: "This man works eight hours for the railroad but he has another sixteen to live. The railroad is getting their eight hours of work. They are not losing a dime over that because the man works but merely because he is able to work, ladies and gentlemen, does not mean that he has not been damaged. The railroad can't cripple a man up and merely because he is able to come down there and put in his eight hours for them say that he is not entitled to recover. What does that man go through down there, putting in his eight hours, working for his family? Is the railroad the least bit interested in that? The feelings that this man has, no, we are not interested in that but can he give us eight hours of work." It may be noted that the questioned remarks were in answer to the argument of counsel for defendant to the effect that plaintiff could not have been badly hurt because he was able to work regularly. While portions of the argument under consideration may perhaps be classified as an appeal to sympathy and bias, we think the remarks did not "so patently pass legitimate bounds as to be manifestly prejudicial and the ruling of the trial court thereon a clear abuse of discretion." Cordray v. City of Brookfield, Mo.Sup., 88 S.W. 2d 161, 165.

It may be stated in regard to all of the foregoing contentions concerning the argument that the complaints were set out in some detail in the motion for new trial and hence the action of the trial court in

overruling same indicates a determination by that court that the argument was not prejudicial. As indicated, under the instant circumstances, we cannot say that its ruling was an abuse of discretion.

The defendant's final point is that the verdict of $30,000 is excessive. It may be noted that the trial court did not require any remittitur. In considering this question we are required to view the evidence in the light most favorable to plaintiff.

Plaintiff is 30 years of age, married, and has three children. His education is limited to the eighth grade. He had worked for defendant since April 1947. When admitted to the hospital he was found to have sustained soft tissue injuries to the neck and low back areas and contusions of both legs and left knee. The X-rays did not indicate any fractures. He was given medicine for pain and physiotherapy treatments. Plaintiff was discharged after six days but continued to return to the hospital almost daily for further physiotherapy treatments. On April 16 he was told by Dr. Funsch of the hospital staff to return to work. He accordingly worked for two days but had to quit because "the pain got so bad I couldn't stand it." Plaintiff stated that he was readmitted to the hospital on May 5 (the hospital records indicate it was April 24) and remained for twelve days, again receiving physiotherapy treatments. The hospital records recite that his second admission was on a stretcher, "complaining of severe back pains." He returned to work on June 4 and (except for two days) worked regularly from then until trial time. At the time of his injury plantiff was earning $360 per month which would indicate that his loss of wages would total $1,440. He proved no medical expense.

At the time of trial plaintiff stated that his left knee pained him every time he put his weight on it; that his neck was stiff and sore and pained him if he moved his head to the right or backwards; that his work bothers his back; that for relief of pain in his neck and back he uses a heat lamp and also soaks his body in a tub of hot water almost every day.

Dr. S. H. Pranger examined plaintiff on February 20, April 20, 1956, and on February 25, 1957, the day of trial. He stated that plaintiff suffered a temporary compression injury in the cervical vertebrae which resulted in some infiltration in the third interspace and that the increased pressure would likely cause pain; that scar tissue was found in the neck and shoulder muscles, which condition is permanent; that the right calf was enlarged and that he had sustained a severe contusion and sprain on the left knee.

Dr. Ernest H. Parsons examined plaintiff on three occasions in 1956 and briefly on the day of trial. Roughly speaking, he related findings similar to those mentioned by Dr. Pranger, except he went further and indicated a view that plaintiff probably sustained a partial herniation of a disc in the low back. His theory seemed to be that the original accident tore the supporting tissues from the lumbar vertebrae and that when plaintiff returned to work on April 16 his activity in stooping and bending caused the disc to extrude through a tear in the supporting tissue which would normally retain the nucleus of the disc. That opinion did not appear to be based on the results of a myelogram or other examination of the plaintiff by this witness, but seemed to be predicated primarily upon that part of a hypothetical question which recited that the hospital records disclosed that when plaintiff was readmitted on April 24 he had pains which "seem to radiate down to both hips and legs" and "there is a left diminished ankle jerk." We also conclude from the testimony of this witness that if there was a herniation of the disc in April 1956, it had gone back into place and that irritation had ceased before plaintiff returned to work on June 4. Dr. Parsons stated, however, that "once there has been a rupture of the limiting membranes and the disc has herniated,

even though it be reduced, it is prone to re-occur when the patient bends, stoops, twists, or gets into an unusual position."

Based upon the premise that plaintiff had sustained a herniated disc, Dr. Parsons was of the view that "he will probably háve more difficulty and will probably come to surgery." He also was of the opinion that plaintiff would develop arthritic changes in the cervical and lumbar region in the course of several years. When asked concerning the permanency of the pain suffered by plaintiff he stated, "it is permanent. This is a condition which does persist. The patient being well free from pain in let's say warm dry weather, with relapses when the weather gets cold and damp and there is not any way that I know of of alleviating the pain." He also expressed the view that plaintiff had sustained a permanent low back injury without reference to the question concerning a ruptured disc.

We deem it advisable to review the testimony of Dr. Parsons concerning the disc injury. On direct examination he stated that a herniated disc had probably occurred although none of his examinations of plaintiff had disclosed neurologic evidence of such. On cross-examination he stated that he was not prepared to say, with medical certainty, that there is, or was, such a disc; that he suspected that a rupture of the disc might have occurred because that is the most common cause of pain radiating down the legs, as indicated in the hospital record of April 24; that his examination disclosed muscle spasm and certain other signs of a disc. But note the following: "Q. But it is entirely correct that you are not prepared to say, with certainty—with medical certainty I should say—that there is a rupture of any of the intervertebral discs? A. That is correct, sir. I believe that is my testimony. Q. So, all of the discussion we have had about what these discs are and what they do and what function they perform, that is all directed to what might have happened or what might have been present, is that correct, sir? A.

Well, I presume so, sir." However, on re-direct examination, after again stating the opinion that plaintiff probably had sustained a herniated disc, the following appears: "Q. Doctor, is that your opinion, based on this term 'reasonable medical certainty' that we have been using? A. Yes, sir, it is."

We doubt that the testimony of Dr. Parsons is sufficient to reasonably support a conclusion that plaintiff sustained a ruptured disc. It will be noted that in two instances he stated the opinion that he *probably* did, and on two other occasions the expression was used indicating that such *might* have occurred. In considering the sufficiency of proof of the permanency of injuries we have said that "the injury must be shown with reasonable certainty and while absolute certainty is not required mere conjecture or likelihood, or even a probability, of such injury will not sustain the allowance of damages therefor." Plank v. R. J. Brown Petroleum Co., 332 Mo. 1150, 61 S.W.2d 328, 334. Moreover, we note that on one occasion this witness stated that his opinion was based upon reasonable medical certainty and on another that he was not prepared to state that it was so based. Plaintiff is not entitled to the most favorable inferences that may be drawn from that kind of testimony, as such would require the jury to speculate as to which answer should be accepted. Stephens v. Thompson, Mo.Sup., 293 S.W.2d 392. In this connection it should also be noted that plaintiff was not required to submit to the painful and uncomfortable processes and treatment that are ordinarily incident to a disc condition. No myelogram was performed; he was not subjected to traction or required to wear a brace to immobilize the back, and it does not appear that he slept with a board under the mattress.

In considering the question before us we have disregarded the testimony of defendant's witness, Dr. George L. Hawkins, Jr., who stated that he had examined plaintiff and found, in effect, that there was

nothing abnormal either in the area of the neck or in the lumbar spine, and was of the opinion that he was not disabled.

 "There is no precise method for determining the maximum award which the evidence in this case will support. Each case must be considered upon its own peculiar facts. Due regard should be given to the purchasing power of the dollar, to the rule of reasonable uniformity of awards for similar injuries and to the fact that the jury and the trial judge were in a better position than this court to measure an award of reasonable compensation, as well as to the fact that the trial court has approved the verdict in question." Burr v. Kansas City Public Service Co., 365 Mo. 115, 276 S.W.2d 120, 127.

The cases are not of much assistance in a determination of the instant question. We have approved verdicts larger than the one in question in a number of cases involving back injuries. Those, however, involved situations where there was a positive diagnosis of a ruptured disc accompanied by a resulting permanent condition whereby the plaintiff was precluded from performing manual labor, or at least that his ability to so labor was substantially impaired. See Rogers v. Thompson, Mo.Sup., 308 S.W.2d 688, and cases cited therein.

To briefly summarize, it appears in the instant case that plaintiff received painful, permanent injuries to the cervical and lumbar areas of the back; that he will permanently suffer pain therefrom; that he will develop arthritic changes in some years; that he is able to work although experiencing pain in so doing.

Upon a consideration of the facts heretofore outlined, we have concluded that the verdict herein was excessive and that the maximum amount for which a judgment should be permitted to stand is $20,000. If, within 15 days after the filing of this opinion, plaintiff will enter here a remittitur of $10,000, the judgment will stand affirmed in the sum of $20,000 as of the date of the original judgment. Other-

wise, the judgment will be reversed and cause remanded for a new trial.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.