Robert J. BADER, Respondent,

v.

Walter B. HYLARIDES, Appellant.

HARTFORD FIRE INSURANCE COMPANY, a Corporation, Respondent,

v.

Walter B. HYLARIDES, Appellant.

No. 23875.

Kansas City Court of Appeals.

Missouri.

Dec. 2, 1963.

Errol Joyce, Brookfield, James J. Wheeler, Keytesville, Robert N. Jones, St. Louis, for appellant.

George S. Thompson, Salisbury, W. K. Gibson and Martin, Gibson & Gardner, Sedalia, for respondents.

MAUGHMER, Commissioner.

This is a consolidated action against the defendant Walter B. Hylarides to recover damages resulting from an automobile collision. The plaintiff Robert J. Bader had a verdict in the sum of $10,000 for personal injuries. The plaintiff Hartford Fire Insurance Company had the verdict for $1500 covering property damage to its automobile which Bader was driving.

The accident occurred in Linn County, Missouri, about 11:30 a. m. on November 13, 1957. Bader was driving a 1957 Ford sedan (owned by Hartford) in a northerly direction on State Highway 11, and at a speed which he estimated to be about 50 to 55 miles per hour. Defendant Hylarides, accompanied by his wife, was driving a 1952 Chevrolet sedan south on this highway. Defendant attempted to turn left into a farm driveway to the Hannick place. This highway was black-top and 20 feet in width. There had been rain during the morning and the roadway was wet with a thin coat of mud.

Defendant said he had slowed speed to less than 10 miles per hour, gave a left turn light signal and got one wheel into the northbound lane when his wife said: "Here comes a car". Defendant stated he had not seen plaintiff's vehicle approaching from the south although he could have seen more than 200 feet in that direction. Bader testified that when defendant started to turn left he was 175 to 180 feet away; that he immediately applied his brakes and skidded his wheels for 120 feet, but the front end of his vehicle hit the right front of defendant's; that when the cars came to rest both were headed generally east and partly in the Hannick driveway.

Sergeant Conyers of the Highway Patrol investigated the accident and made some measurements. He quoted defendant as saying: "I was turning into the driveway and I didn't see the car until he was right on me. I couldn't get back on my side or get out of the way". Conyers took Bader to the Bothwell Hospital in Sedalia.

Plaintiff at the time was the operator of an insurance agency. He was on the way north from his home in Sedalia to Milan, where he planned to stop on business and then go on to Memphis for quail hunting. There was no dispute as to Hartford's ownership of the Ford. Neither side objected to the consolidation of the two cases for trial.

Defendant on appeal raises no question as to liability. Therefore our brief résumé as to how, why and where the accident occurred seems to be in sufficient detail and we shall consider the assignments of error presented by defendant on this appeal.

The charge that the trial court erred in permitting plaintiff to impeach defendant, whom plaintiff had called as a witness, was abandoned in the oral argument here.

■ Assignment 3 predicates error upon counsel's argument to the jury that "the demineralization of bone resulted from the collision. despite the fact there was no evidence to connect the two". Assignment 5 charges error in permitting Sergeant Conyers to state what the parties had told him at the scene and a few minutes after the accident "as to who was driving, what, where and when". The transcript shows that on his direct examination Conyers testified that the defendant Hylarides had told him: "I was turning into the driveway and I didn't see the car until he was right on me. I couldn't get back on my side or get out of the way". This testimony was properly received as a statement against interest or as part of the res gestae, or both. Besides, defendant said almost exactly the same thing in this own oral testimony. It was on cross-examination that Sergeant Conyers was asked and stated what plaintiff told him at the scene. It was not error to receive this testimony from the patrolman. Dr. Stewart testified that the x-rays taken December 5, 1960, revealed "spotty demineralization" about the knee, which condition was not apparent in the earlier x-rays. We believe counsel's argument claiming the demineralization resulted from the collision was not improper.

[4] In addition, Rule 83.13(a) V.A.M.R. Rules, provides that apart from certain questions not involved here "no allegations of error shall be considered in any civil appeal except such as have been presented to or expressly decided by the trial court". In Stremming v. Holekamp Lumber Co., Mo.App., 238 S.W.2d 31, 37, appellant contended the court erred in overruling defendant's objection to certain remarks made by plaintiff's counsel in his jury argument. The appellate court said: "In its motion for new trial defendant made no complaint with reference to the above argument or the court's ruling with respect thereto. We are, therefore, precluded from considering appellant's complaint here". See also Mallory Motor Co. v. Overall et al., Mo.App., 279 S.W.2d 532, 535, and Myers v. Karchmer et al., Mo., 313 S.W.2d 697, 701. Appellant says Assignments 3 and 5 are preserved in the motion for new trial under the broad statement that "The court erred in admitting irrelevant, incompetent, illegal, hearsay, immaterial, prejudicial and highly inflammatory evidence and testimony * *". We doubt that this specification meets the requirement of Rule 83.13(a) supra, that "no allegations of error shall be considered * * * except such as have been presented to or expressly decided by the trial court". Both of these assignments are overruled.

■■ Appellant asserts the court erred in receiving the opinion evidence of the witness R. P. Jackson as to the value of the Ford automobile immediately before and immediately after the collision. Mr. Jackson is the Ford dealer in Salisbury, Missouri. He has been an automobile dealer for the past 30 years. He clearly qualifies as an expert on the value of Ford automobiles. He had never seen this particular automobile. Other testimony, however, showed it was a 1957 V-8 Fairlane Ford, with safety package, good tires, in good mechanical condition, automatic transmission, radio and heater, bought in August, 1957, and had been driven 9,000 miles. Assuming all these facts, the witness expressed it as his opinion that the vehicle was worth $2200. We believe he qualified as an expert and the court was justified in receiving his opinion as to the value of the car before the accident. He then was directed to assume the Ford had been in a collision; that the frame was bent, the grill, radiator, fenders, hood, left front wheel, front bumper, headlights and left door frame had been damaged as a result and was then shown a picture of the vehicle taken just after the accident. Based upon these assumptions and his observation of the picture, he was permitted to state his opinion that the damaged car was worth six or seven hundred dollars. On cross-examination Mr. Jackson admitted he would be glad to buy at this price, saying: "I am making a little money on it". We quote in part from the opinion of the Supreme Court in Myers v. Karchmer, 313 S.W.2d 697, 707,

708. " * * * and that the testimony of a certain witness, as to the value of the truck before and after the collision, was incompetent because the witness, admitted to be an expert as to truck values, was not qualified to testify concerning this truck's value, not having seen it before it was damaged or immediately after the collision. He did see it later, before repairs were made. His opinion was given in answer to a hypothetical question, since there was other evidence that the truck was a 1955 Chevrolet two-ton truck having a combination stock and grain bed and in average or above condition when wrecked. Photographs showing the condition of the truck after the collision were also in evidence. * * * Considering the evidence in the record in a light favorable to plaintiff, we find it sufficient to sustain the giving of the instruction". We do not believe the court abused its discretion nor erred in receiving the expert opinion of this witness and the assignment is overruled.

Finally appellant asserts the case should not have been submitted because (1) the evidence was insufficient to support a finding of causal connection between the collision and plaintiff's injuries; (2) the verdict is grossly excessive and (3) there is no evidence based upon "reasonably medical certainty" that plaintiff's injuries were caused by the automobile accident rather than by a gunshot wound, and plaintiff has not sustained the burden of so showing. Concisely stated, this assignment asserts the evidence was insufficient to authorize submission to the jury and the verdict is grossly excessive.

Plaintiff was 37 years of age at the time of the accident. On February 27, 1945, he had been shot in the right hip with a rifle fired by a German sniper. He was hospitalized in Germany, Belgium, France, England and finally, in Oklahoma, until June, 1945. Veterans Administration doctors recommended surgery to immobilize the hip, which plaintiff refused. He was finally discharged from the convalescent hospital at Camp Carson, Colorado, on October 1, 1945. In 1948, the Veterans Administration made an award rating Mr. Bader's disability as 60 percent permanent partial by reason of his hip injury.

After leaving the Government hospital in 1945, Mr. Bader attended a business college for 18 months, then sold automobiles for a short time and after that sold and collected on a debit insurance route. He operated a milk truck, delivering milk for Yellow Meadow Dairy. In 1954, he started working for the Hartford Fire Insurance Company as a part time hail adjuster. After completion of training with this company and in June, 1956, he began working for them "full time".

Plaintiff testified that he "walked his route" in Omaha on the insurance debit; that he delivered milk and other dairy products from his truck to customers' houses, while he operated the milk truck. He said he wore a hip brace from 1946 to 1948, but not thereafter. Plaintiff asserted that his duties as hail insurance adjuster required him to walk over fields inspecting damage to crops. There was testimony from social associates and from himself that prior to the automobile collision plaintiff also played golf, belonged to a bowling league, danced, played badminton and "played with the kids".

Plaintiff described his apparent injuries in the accident as "cut along the left forehead and my knees from the dash was quite severely bruised, one of them was cut and by the time we got to the hospital the blood had run to my stocking. My elbows, when they went forward on the steering wheel, they caught and were black and blue and red and I was stiff and sore all over and I did have some pain in my back, and of course, my hip too bothered me quite a bit". " * * * I had also sprained my right ankle". Plaintiff was rather continuously under medical care thereafter. He had two periods of hospitalization—from November 13, 1957 to January 1, 1958, and from October, 1959 to January 20, 1960, when surgery was performed on his hip. His employer company continued to pay his salary. Plaintiff has resumed his employ-

ment in part, at least. He says he now calls on agents and collects premiums but does not adjust losses. Plaintiff says he suffered pain and used crutches or a cane to walk with until June, 1961; that since the collision he has been unable to sleep and does most of his sleeping sitting in a chair. He no longer bowls, plays golf, badminton or goes dancing.

Dr. Robert H. Stewart and Dr. Donald C. Porter, both of Sedalia, who examined and treated plaintiff at his request, testified in person. The medical reports of Dr. Harold V. Zuber and Dr. Rex L. Diveley, orthopedic surgeons in Kansas City, Missouri, were received in evidence. Dr. Stewart qualified as a radiologist and general practitioner. He took X-rays of the plaintiff's pelvis and knees in November, 1957, which revealed "some swelling to the kneecap or patella", but no disease of the bone, some "spotty demineralization" in the bones about the knee. He observed a "considerable amount of arthritis involvement in pictures taken April 16, 1962, and injuries resulting from an operation which had been done in the right hip".

Dr. Porter has been plaintiff's family physician for years. He saw him in the Bothwell Hospital in Sedalia just after the automobile accident. Plaintiff complained of pain in both knees and had a laceration on his left forehead. This doctor saw and examined plaintiff intermittently, but rather regularly thereafter. In response to a hypothetical question covering the collision and plaintiff's knees striking parts of the automobile, this doctor said: "A strong force hitting the knee, it probably would aggravate the pre-existing arthritis". Again he expressed his opinion that a "blow on the right knee probably would aggravate this condition" (arthritis), and later: "It is my opinion that it did".

From October, 1959 until June 20, 1960, plaintiff was in the Veterans Hospital in Kansas City and hip surgery was there performed. The record contains neither medical reports from the Veterans Administra-

tion nor any testimony from any of its physicians. However, X-rays taken thereafter show that the surgery consisted of removal of the head of the femur and placement of the neck of the femur in a vitalium cap. This operation is called orthoplasty.

The medical report of Dr. Harold V. Zuber, orthopedic specialist who examined plaintiff on February 14, 1958, is in evidence. This report recites the fact of the gunshot wound in 1945 and the automobile accident in 1957. Dr. Zuber reported a mild limp in the right leg, and described "a healed transverse scar on the left forehead extending to the hairline and measuring $2\frac{1}{4}$ inches in length". This report states that if it were not for the definite history of trauma to the head of the right femur, the changes shown by the X-rays could very well pass as being present since the early 'teens with gradual degenerative changes. He found no evidence of bone or joint pathology. His conclusion was that the plaintiff was suffering from traumatic arthritis involving the right hip joint, secondary to a gunshot wound sustained in World War II.

The report of Dr. Rex L. Diveley, who examined plaintiff on January 16, 1959, lists complaints at that time as pain and stiffness in both knees and the right hip and at times pain in the lower back. X-rays were taken. He found no injury to the knees and expressed the opinion that the knee strain was coming from hip pathology. His report concluded with this statement: "Whether or not this accident which he sustained some time ago has aggravated the condition of his right hip and back is rather problematical".

In Dennison v. Whaley, 285 S.W.2d 73, 75, this court considered a hypothetical question put to a doctor wherein he answered that it was "possible" and "probable" that plaintiff's condition resulted from the automobile collision. This court said:

"Furthermore, we cannot say that Dr. Humphreys' answer to the hypo-

thetical question was no substantial evidence whatever, in view of the other facts in evidence such as the admitted casualty and certain physical injuries both to the car and to plaintiff immediately observed at the place of accident by defendant and others. (citing cases)".

The St. Louis Court of Appeals in Baumhoer v. McLaughlin et al., 205 S.W.2d 274, 281, ruled where the petition alleged aggravation of a pre-existing arthritic condition by a fall, the opinion of a doctor based on plaintiff's present complaints, the fact of the fall and X-rays was competent and amounted to substantial evidence.

Appellant has cited numerous cases, many of which are suits involving workmen's compensation. In many of those cases the appellate court affirmed the finding of the Commission on questions of fact. This is required when there is substantial evidence supporting the conclusion reached by the Commission. In two other workmen's compensation cases called to our attention the employee had a fall on the job but died from a heart attack. The courts held in those instances that it had not been proved that the death or injury was caused by an accident arising out of the employment. Those cases are not in point.

█ Reviewing the evidence in this case we find the admitted collision, physical injuries to plaintiff and damage to his automobile, his periods of hospitalization finally leading to a hip operation, his substantially reduced physical activities after the casualty as compared to such activities before the accident, his complaints as to pain and inability to sleep and the permanent scar on his forehead. The medical evidence reveals a partially disabled hip and an arthritic condition which, as shown by the X-rays, became progressively worse after the accident. Dr. Diveley expressed no positive opinion either way as to whether or not the accident aggravated his hip and back condi-

tion, saying merely that it was "rather problematical". Dr. Porter was asked if the blow on the right knee would "aggravate this condition" and replied: "It is my opinion that it did". We believe that plaintiff made a submissible case, that substantial evidence—medical and lay—was presented and that the court did not err in refusing to take the case from the jury.

█ Appellant's final contention is that the verdict is grossly excessive. The criterion for determination of this question was recently restated by the Supreme Court when in Kiger v. Terminal Railroad Association of St. Louis, 311 S.W.2d 5, 15, it quoted with approval as follows from Burr v. Kansas City Public Service Company, 365 Mo. 115, 276 S.W.2d 120, 127:

" 'There is no precise method for determining the maximum award which the evidence in this case will support. Each case must be considered upon its own peculiar facts. Due regard should be given to the purchasing power of the dollar, to the rule of reasonable uniformity of awards for similar injuries and to the fact that the jury and the trial judge were in a better position than this court to measure an award of reasonable compensation, as well as to the fact that the trial court has approved the verdict in question.' "

We do not believe the award here is excessive under the evidence and we shall not disturb it.

Finding no reversible error, the judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the court.

All concur.