ABRAHAM D. GARBER *vs.* ISAAC E. LEVINE.

Suffolk.    November 11, 1924. — January 9, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & WAIT, JJ.

*Negligence,* Employer's liability. *Evidence,* Of negotiations in attempt to compromise.

At the trial of an action of tort by an employee in a bakeshop against his employer for personal injuries alleged to have been caused by the plaintiff's slipping on a wet platform in front of a dough mixing machine by reason of the defendant's failing to furnish to the plaintiff a reasonably safe place in which to work, it appeared that the defendant was not insured under the workmen's compensation act. The defendant contended that the plaintiff had assumed the risk of the injury which he had received. The defendant testified in contradiction of the testimony of the plaintiff as to a wet condition of the platform and floor and said that the floor "was never wet" and that at the time of the accident the floor and platform were dry. *Held,* that

(1) It did not lie in the mouth of the defendant to contend that the plaintiff contractually assumed the risk of a physical condition of the premises which he denied existed when the plaintiff entered the employment of the defendant;

(2) Conduct of the plaintiff in continuing with his work in the defendant's shop with full knowledge of the dangerous and unsafe condition of the floor and platform after he had complained to the defendant and the defendant had refused to do anything to make the floor reasonably safe, was not a defence available to the defendant, he not having become insured under the workmen's compensation act.

At the trial above described, there was evidence that the floor of the shop and the platform in front of a mixing machine where the plaintiff worked were wet; that the plaintiff had complained to the defendant; that the defendant told him to go on with the work; that the plaintiff did so and, slipping, was injured. *Held*, that a finding for the plaintiff was warranted.

At the trial of an action of tort for personal injuries, the defendant testified in cross-examination that at a time four months after the accident he was in the office of a lawyer, not his own, and there met the plaintiff. Subject to an exception by the defendant, he then was asked if the plaintiff then said to him that he had been injured in the manner which he described at the trial, and answered, "No"; and that nobody had said anything to him in that office about how the accident happened. The lawyer then testified that such an interview occurred and that "it was understood at that time that what was said at that time was said without prejudice to either party," and that the plaintiff had made statements to the defendant as to his injuries and accident. The defendant moved to strike out the testimony. The motion was denied. *Held*, that the motion should have been allowed and the evidence stricken out in conformity to the public policy of encouraging peaceful outdoor adjustment of cases and causes of litigation.

TORT for personal injuries received by the plaintiff while in the employ of the defendant, who was not insured under the workmen's compensation act. Writ dated November 15, 1920.

In the Superior Court, the action was tried before *Fosdick*, J. Material evidence and rulings by the trial judge are described in the opinion. There was a verdict for the plaintiff in the sum of $3,500. The defendant alleged exceptions.

The case was submitted on briefs.

*J. A. Curtin, W. F. Poole, & A. S. Allen*, for the defendant.

*J. H. Vahey, P. Mansfield, & B. Beerman*, for the plaintiff.

PIERCE, J. This is an action of tort for personal injuries, sustained by the plaintiff while engaged in the employment of the defendant. The defendant was not insured under the workmen's compensation act. At the close of the evidence, the defendant moved that a verdict be directed for him upon all the evidence. This motion was denied by the trial judge and the defendant duly excepted.

Putting to one side all testimony unfavorable to the alleged cause of action, the remaining testimony in support of the contentions of the plaintiff that there was on his part no contractual assumption of risk and that the negligence of the defendant in failing to furnish and maintain a reasonably safe place for the plaintiff to work was the direct cause of the personal physical injury for which he seeks damage of the defendant, would have warranted the jury in finding the facts which follow.   On November 14, 1920, the plaintiff was in the employment of the defendant as a baker at 84 Arlington Street, Chelsea.   He worked upon a dough mixing machine, standing upon a platform in front of the machine. He had worked at the same occupation and in the same place for about one year, the last two months for the defendant, before then for one Rose.   When he worked for Rose he did the same kind of work in the same dough mixing machine and on the same platform as when he worked for the defendant.   When the defendant bought out Rose, the same dough mixing machine that had been used by Rose was afterward used by the defendant and the machine was at the same place in the shop when Rose was there as it was when the defendant was there.   The platform was used in just the same way while Rose was there as while Levine was there.   The bakery is in a basement and the oven opens into the basement.   The floor was always clean when Rose was the owner of the shop.   The defendant did not keep the shop clean, the floor was frequently slippery due to moisture and dirt, and the platform became slippery frequently from the wet soles of the shoes of the plaintiff as he went back and forth carrying water from the sink to the machine.   About seven o'clock on Saturday night, before the accident, which occurred on Sunday morning at three o'clock, he told the defendant that the floor was wet and that the defendant " should spill sawdust to make it right."   The defendant replied " Go ahead, I must have my work, I am late.   I must have my bread at five o'clock.   I am busy, go ahead, do your work."   The platform got wet from his going up and down upon it.   As he stood on the platform the top of the dough mixing machine came about two or three inches

above his waist line. The whole top of the machine is open, there is no covering at all over the top. He started and stopped the machine as he did the work and he could see anything inside the machine when it was running. There. are two arms of an agitator inside the machine, and as they come up and revolve away from one standing in front of the machine they go within fifteen to sixteen inches of the top of the tank and within three eighths to one half inch of the side walls of the inside of the tank.

It further appeared in evidence that just before the accident the platform and floor were more slippery than they were at seven o'clock; that it was more difficult in walking from the dough mixing machine to the bench and back again at that time than at the beginning of the evening; that at the time of the accident the plaintiff was standing on the platform in front of the dough mixing machine; that there was a bag of flour standing near; that he took some flour in his hands from this bag and spread it over the dough; that he did this twice; that " then the third time," as the plaintiff described the sequence of events, " I took some flour from the bag in my hand and intended to spread it over that dough in the machine when I slipped, and when I slipped one of my hands fell in the side of the machine and cut my finger off." The defendant contradicted the statement of the plaintiff that he made complaint as to the condition of the floor, and testified that the floor " was never wet "; that the " floor of the shop was dry "; that " at the time the accident happened the floor was clean and dry "; and that " the platform was dry."

It is evident it does not lie in the mouth of the defendant to contend that the plaintiff contractually assumed the risk of a physical condition of the premises which he denies existed when the plaintiff entered the employment of the defendant. The plaintiff's action in continuing to work in the shop of the defendant with full knowledge of the dangerous and unsafe condition of its floor and of the platform of the machine, after his complaint and the refusal of the defendant to do anything to make the floor reasonably safe, is not a defence to the defendant who was not insured under the work-

men's compensation act. We think the question of the defendant's negligence was for the jury, and that the refusal to direct a verdict was right.

In cross-examination the defendant testified that he knew a lawyer named Joseph Bearak; that he was in his office once; that he met Garber there; that he was in Bearak's office with Garber and Simon Bennett about four months after the accident; that Bearak was not the defendant's attorney; that a friend asked him to go to see Bearak and that he met Garber there. The defendant was then asked, "Did Mr. Garber say to you on that day that he had been injured by reason of his foot slipping on the platform near the dough mixing machine?" The defendant objected to this question on the ground that "they were talking over compromise with this plaintiff and therefore all matters considered then are not admissible." The objection was overruled and the defendant duly excepted. The defendant was then allowed to answer "No," and to testify further that nobody said anything to him in that office about how the accident happened. To all of this conversation the defendant duly excepted.

Joseph Bearak, after testifying that he had a talk with both of them in his office, was asked " At that time in the course of the conversation did you hear Garber say anything in reference to how the accident happened, in Levine's presence? " The defendant duly objected upon the ground that the conference was for the purpose of talking over a compromise in this matter. The judge required the answer to be given, on the ground that the plaintiff might argue from the expected answer " that the claim that the plaintiff makes with reference to having the foot slip is not a new claim," and also on the ground that it would contradict the testimony of the defendant. The witness then answered " Garber said, as near as I can remember, that the platform was wet and muddy with dough and it gave way from under him; I don't remember he said which foot gave way first, but he said he slipped." On cross-examination the witness testified that the appointment at his office was arranged by Clarence Richmond; that he represented the defendant; that

Richmond was present for the defendant; that they met in his office for the purpose of settling the case; that it was understood in advance, " and it was understood at that time that what was said at that time was said without prejudice to either party." Thereupon the defendant moved that all the witness's testimony as to what was said in his office be stricken out and to the denial of this motion the defendant duly excepted. There was testimony of other witnesses as to what Garber said, to the same effect, and that Levine did not say anything, to which questions and answers the defendant duly excepted. The evidence admitted over the exception of the defendant was submitted to the jury on the theory that the jury from the silence of the defendant might infer an admission of liability.

In the circumstances it is entirely clear that the evidence of what Garber said and that the defendant made no reply thereto should have been excluded on ground of public policy, the policy of encouraging peaceful out-door adjustment of cases and causes of litigation. *Dickinson* v. *Dickinson*, 9 Met. 471, 474. *Harrington* v. *Lincoln*, 4 Gray, 563. *Johnson* v. *Trinity Church Society*, 11 Allen, 123. Wigmore on Ev. (2d ed.) § 1061. *Molyneaux* v. *Collier*, 13 Ga. 406, 415. *White* v. *Old Dominion Steamship Co.* 102 N. Y. 660, 662. It indisputably appears that the plaintiff and defendant met at the office of a disinterested attorney to settle and compromise their differences, in the faith that what was then said, could be said without prejudice and without fear that what was said might subsequently be introduced in evidence as admissions against the one party or the other. In the case at bar it is to be noted that the defendant made no statement of fact; and made no admission of fact, unless an admission of the truth of the statement of the plaintiff resulted from the fact that the defendant said nothing in reply thereto. It is further to be observed that the statement of the plaintiff concerned vital elements in the proof of his case, and in no wise could be said to relate to facts which were collateral to the subject matter of the conference.

*Exceptions sustained.*