FLORENCE McCarthy *vs.* New York, New Haven and Hartford Railroad Company.

Hampden. September 21, 1933. — February 13, 1934.

Present: Rugg, C.J., Crosby, Pierce, Wait, Field, Donahue, & Lummus, JJ.

*Negligence,* Employer's liability: dangerous place in which to work, unfit appliances, contractual assumption of risk. *Interstate Commerce.*

An employee of a railroad corporation, while engaged in painting posts in one of its roundhouses in which were housed and repaired locomotives used in interstate transportation, was not engaged in interstate transportation.

At the trial of an action at common law against a railroad corporation for personal injuries sustained by an employee of the defendant while painting the upper portion of a post in one of the defendant's roundhouses, there was evidence that the floor of the roundhouse was dry when the plaintiff first went to work, but that after a time it became greasy and wet; that the plaintiff told the defendant's foreman that it was not very safe to go up on a ladder to do the work, to which the foreman replied, "Go ahead; do the best you can"; that of the ladders in the roundhouse the only one which could be used was one which was not equipped with spikes or any other device to prevent it from slipping and whose side pieces had rounded edges at the ends where they rested on the floor; that the plaintiff told the foreman that he could not reach the end of the wing of the post because the ladder was too short, and that he was afraid he might fall if he reached too far, to which the foreman replied, "Why . . . you can get there easy"; that the roundhouse quivered and shook every time an engine passed in or out of it; and that, as one of the engines backed out of the roundhouse, the ladder fell and the plaintiff was injured. The trial judge ordered a verdict for the defendant. *Held,* that

(1) Findings were warranted that the defendant provided the plaintiff with an unsafe place in which to perform his work, and that the appliances provided were not fit and proper for the work which the plaintiff was ordered to do;

(2) There being evidence that the floor was dry when the plaintiff first went to work, a slippery floor as a source of danger in the plaintiff's work could not have been within the contemplation of the parties when the plaintiff's employment commenced, and it could not properly be ruled that there was a contractual assumption of risk on the plaintiff's part;

(3) It was error to order the verdict for the defendant.

Tort. Writ dated October 9, 1930.

The action was tried in the Superior Court before *Dillon,* J. Material evidence is stated in the opinion. The judge ordered a verdict for the defendant. The plaintiff alleged exceptions.

The case was submitted on briefs in September, 1933, to *Rugg,* C.J., *Crosby, Pierce, Field,* & *Donahue,* JJ., and afterwards was submitted on briefs to all the Justices.

*J. F. Egan* & *E. S. Searle,* for the plaintiff.

*E. J. Phillips,* for the defendant.

CROSBY, J. This is an action of tort arising out of an injury received by the plaintiff while he was in the employ of the defendant. The declaration contains three counts. In the first, the plaintiff alleges failure to provide a proper and safe place for the plaintiff to work, failure to provide him with suitable and safe appliances with which to work, and failure to warn him of hidden dangers or defects in connection with the work. In the second count at common law the plaintiff alleges that the defendant required the plaintiff to do painting, in which he was not skilled, and that the defendant failed to furnish him with suitable appliances for doing the work, and failed to warn him of the dangers involved in doing the work. In the third count, under the Federal employers' liability act, the plaintiff alleges that the defendant and the plaintiff were engaged in interstate commerce, and that the defendant failed to maintain an appropriate place where the plaintiff might prosecute his employment safely, failed to furnish him with suitable and safe appliances with which to perform his work, and failed to warn him of hidden defects and dangers connected with the work he was given to do. The defendant's answer was a general denial, except that it admitted that the defendant was engaged in interstate commerce, and that the plaintiff was in its employ. The answer also alleged that under the Federal employers' liability act the plaintiff was guilty of contributory negligence which was the proximate cause of the accident, and that he assumed the risk. At the close of the evidence, upon the defendant's motion the trial judge directed a verdict for the defendant on the ground that no negligence

had been established. To this direction the plaintiff excepted.

The plaintiff testified that in 1927 he was hired by Charles Degnan, general foreman of the defendant, to work as a laborer at the defendant's engine house in Springfield. He did laboring work of various kinds in the yard for about seven or eight months, then he was brought inside and Degnan showed him how to paint engines, and thereafter up to the date of his injury he did all sorts of laboring work around the roundhouse. He testified on direct examination that when he started to work "they kept their floors pretty good 'in the beginning'; they were dry but after a while grease formed around there in the aisle." On cross-examination he testified that during all the time of his employment inside the roundhouse there was grease on the floors. He was then asked: "You can't run a roundhouse without having grease on the floor can you?" and he answered: "Black, heavy grease." There were posts in the engine house and he painted the lower seven or eight feet of them black from the ground up; he never painted the higher part of the posts, which could be reached only by using a ladder, until Degnan told him the morning he was hurt to get started on them. He asked how he was to get up there and Degnan said, "Won't your ladders reach up there?" and the plaintiff replied in substance that one of them would but that he did not know about the other one; he told Degnan it was not very safe to go up there, and Degnan replied: "Go ahead; do the best you can." The plaintiff further testified that there were three ladders available, a step ladder ten or twelve feet long, a fifteen-foot ladder, and a ladder between twenty-five and thirty feet in length which was too long to use in painting the upper part of the posts. The step ladder was loose and old so that he had to take the fifteen-foot ladder. He had used this ladder before outside the roundhouse. He described it as painted green with one rung, the second from the bottom, not broken off but cracked and hanging down, the rungs were loose and the side pieces rounded at the bottom. The floor of the round-

house was greasy, oily, and there was a lot of rain water around there. He climbed the ladder with his paint pot and brush and started to work; he painted three or four posts and was having trouble with the wings attached to the posts. He testified that he could not get out to the wings as the ladder was not long enough; that Degnan came there after a while and the plaintiff told him he could not reach the end of the wing because the ladder was too short; Degnan said, "Why can't you get out there?" and he replied, "I tried to, but I was afraid I might fall off if I would reach too far"; Degnan then said, "Why . . . you can get there easy." The plaintiff testified that he continued painting there when an engine backed out and the ladder went from underneath him and he was thrown to the floor; that as the engine backed out he "felt the post quiver, the house quiver like, or shake." He testified on cross-examination that all the large engines that go in and out of the house make it quiver; that there was nothing unusual about that; that he could not tell exactly what caused him to fall, "but it was the quiver and the oily ground. That he could not say which was most important — both together"; that "When he painted with this ladder outside the roundhouse the ladder was placed on cinder or on sandy ground." As Degnan, the foreman, was not present at the trial it was agreed that, if present, he would testify as follows: "I inspected the ladder and the floor after the accident; found the ladder O. K.; floor was also O. K. I passed by where McCarthy was working about five minutes before the accident. The ladder was then in its proper position, with McCarthy working on it." There was testimony by the yard master of the defendant, in charge of the movement of trains, that the engines housed in this roundhouse were passenger and freight locomotives, and switchers; that they hauled trains from Connecticut and New York, and that switching engines switched cars in the yard and made up trains and broke them up; that the trains came from Connecticut and New York. Certain other evidence was offered by the plaintiff as expert testi-

mony of the proper method of doing the work in which the plaintiff was engaged at the time he was injured; that the ladder furnished the plaintiff was not proper to be used in doing the work; that a proper ladder should have had spikes in it, or be fastened at the bottom to a post, or should rest on planks or burlap.

If the plaintiff's cause of action arose in connection with the interstate commerce of the defendant, his rights would be governed by the Federal employers' liability act rather than by the law of this Commonwealth. *Griffin* v. *New York, New Haven & Hartford Railroad,* 279 Mass. 511, 515. *Dewing* v. *New York Central Railroad,* 281 Mass. 351, 353. It appears from the undisputed evidence that at the time the plaintiff received his injury he was engaged in painting posts at the roundhouse in which were housed and repaired locomotives engaged in interstate transportation. It may be assumed that a roundhouse is an essential part of a railroad's system necessary in the operation of the railroad and in carrying on interstate commerce. It does not necessarily follow therefrom, however, that an employee engaged in painting parts of such a building is so far engaged in work so clearly related to interstate transportation as to be practically a part of it. We are of opinion that the work in which the plaintiff was engaged was too remote so to hold. The case upon this question is governed in principle by *Shanks* v. *Delaware, Lackawanna & Western Railroad,* 239 U. S. 556, 559, 560. It follows that the rights of the parties are to be determined under the laws of this Commonwealth.

The first and second counts of the plaintiff's declaration are at common law. The evidence in the light most favorable to the plaintiff shows that the floor of the roundhouse where the plaintiff was directed to do this painting was wet, greasy and oily. In doing this work he was required to use a ladder. Of the three ladders in the roundhouse the only one which could be used for the work was fifteen feet long. This ladder was not equipped with spikes, or any other device to prevent it from slipping. In fact the bottom of the side pieces which rested on the floor had rounded edges. The

plaintiff had to go to the top of the ladder with a brush and can of paint and bend over sideways to paint the wings. There was undisputed evidence that the roundhouse quivered and shook every time an engine passed in or out of it. Notwithstanding the slippery condition of the floor, and the fact that the ladder had no spikes or other device to prevent its slipping, and the plaintiff told the defendant's foreman it was not safe to be upon the ladder, it could have been found that he replied, "Go ahead; do the best you can." We are of opinion, in view of the evidence, a verdict could not properly have been directed for the defendant. *Garber* v. *Levine,* 250 Mass. 485, 488. *McKee* v. *Tourtellotte,* 167 Mass. 69. *Moynihan* v. *Hills Co.* 146 Mass. 586. *McDonnell* v. *New York, New Haven & Hartford Railroad,* 192 Mass. 538, is distinguished in its facts from the case at bar. The jury would have been warranted in finding that the defendant provided the plaintiff with an unsafe place in which to perform his work, and that the appliances were not fit and proper for the work ordered to be done.

The defendant contends that the plaintiff contractually assumed the risk arising from the existing conditions. *Sylvain* v. *Boston & Maine Railroad,* 280 Mass. 503. But it appears from the evidence that the floor was not greasy when the plaintiff first went to work. It is apparent, therefore, that the source of danger arising from the work could not have been within the contemplation of the parties when the relation of master and servant began. Consequently there was no contractual assumption of risk. *Demaris* v. *Van Leeuwen,* 283 Mass. 169, 171.

As a verdict could not properly have been directed for the defendant the entry must be

*Exceptions sustained.*