ALBERT EDWARD RANKIN *vs.* THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY.

Worcester.   September 22, 1958. — December 5, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, WILLIAMS, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Negligence,* Employer's liability: place of work, heavy object, Federal employers' liability act, railroad yard; Heavy object; Railroad: yard, heavy object. *Release. Fraud. Mistake. Practice, Civil,* Auditor: recommittal.

Federal law governed the determination of the issues whether evidence in an action under the Federal employers' liability act against a railroad by an employee for personal injuries sustained in its yard warranted a finding that the defendant was negligent and whether a release given to it by the plaintiff was valid.   [181]

A finding of negligence under the Federal employers' liability act on the part of a railroad toward a track worker was warranted by evidence that, while he and a fellow worker were carrying one end of a heavy rail in the defendant's yard, two other fellow workers carrying the other end of the rail "suddenly without warning . . . dropped their end" contrary to his instructions and he, "to avoid being struck by the rail," "jumped and as he did his left foot . . . went into a hole . . . recently . . . dug," causing him injury.   [182]

Findings by an auditor in an action under the Federal employers' liability act against a railroad by an injured employee would not have warranted a conclusion that a general release signed by him was void under Federal law as having been procured by deliberately false and material statements of the railroad's authorized representative made to deceive the employee into thinking that the release was a mere receipt for back wages. [185–186]

In an action under the Federal employers' liability act against a railroad by an injured employee in which the defendant pleaded that the plaintiff was barred from recovery by a general release signed by him, findings would have been warranted that at the time of the execution of the release the plaintiff and the defendant did not know the true extent of the plaintiff's injuries and regarded them as less serious than they subsequently turned out to be, that the monetary settlement made in consideration of the release was a small amount in relation to the seriousness of the injuries as they finally developed, and that the settlement was based upon a misapprehension of the extent of the injuries, so that under Federal law the plaintiff might avoid the release by reason of mutual mistake. [187–188]

It would be within the discretion of the Superior Court, upon this court's sustaining exceptions in an action in which findings of an auditor comprising the principal evidence before the jury should have been more specific and informative on material issues, to recommit the report to the auditor for clarification and amplification of his findings before submitting the case to another jury. [188]

TORT. Writ in the Superior Court dated August 17, 1954.

The action was tried before *Meagher*, J.

The case was argued in September, 1958, before *Wilkins*, C.J., *Williams, Counihan, Whittemore,* & *Cutter*, JJ., and afterwards was submitted on briefs to all the Justices.

*John J. O'Connell*, for the plaintiff.

*Noel W. Deering*, for the defendant, submitted a brief.

CUTTER, J. This action of tort was brought under the Federal employers' liability act, 45 U. S. C. (1952) § 51 et seq. (hereinafter called the act). The plaintiff's bill of exceptions presents the question whether the trial judge correctly directed a verdict for the defendant.

The case was referred to an auditor whose report, together with certain documentary evidence, was introduced in evidence at the jury trial. The facts, in their aspect most favorable to the plaintiff, are stated below.

The plaintiff was a track worker, subject to the act, employed by the defendant. On September 12, 1952, he was

put in charge of three men and told to move some rails within the defendant's yards. Each rail weighed between six hundred and eight hundred pounds, and was carried by means of two pairs of tongs. One pair was used to lift each end of a rail and the plaintiff and each of the other three men in the group held one handle of a pair of tongs.

The four men moved several rails with difficulty. Before moving another rail, the plaintiff "instructed his coworkers on the other end of the rail not to drop their end until he gave them a signal to do so." While carrying this rail, "suddenly without warning the two men on the other end of the rail dropped their end . . . . To avoid being struck by the rail, the plaintiff jumped and as he did his left foot . . . went into a hole . . . [about six inches deep and twelve inches square] recently . . . dug . . . causing the plaintiff severe injury."

The plaintiff received hospital treatment and thereafter remained under regular treatment by a physician in the employ of the defendant. In June, 1954, he was again admitted to the hospital. "The diagnosis of a ruptured disc was arrived at and on July 27, 1954," he underwent an operation. His aggregate hospital and medical bills amounted to $1,420.60.

From October 9, 1952, to March 20, 1953, the defendant made a number of payments to the plaintiff amounting in the aggregate to $2,400. On March 20, 1953, the "plaintiff signed a general release prepared by the defendant releasing the defendant 'on account of damages of whatever . . . description now existing or which may arise . . . out of the injuries . . . received by me at . . . Worcester . . . on . . . 12th . . . September, 1952.' . . . [T]he plaintiff also wrote on the release . . . 'I have read this release and understand it.'"

Despite the release, the auditor found for the plaintiff and assessed damages in the sum of $12,400 from which the sum of $2,400 already paid was to be deducted. Further findings of the auditor about the release are discussed below in connection with the consideration of its validity.

The defendant at the trial before a jury introduced in evidence the release itself and an instrument, dated March 20, 1953, purporting to be signed by the plaintiff, reading, "I have this day executed a general release for $2400.00 on account of injuries sustained by me on September 12, 1952. I agree that none of the amount received is payment for time lost, and that I have no right or claim to any payment for time lost." There was also in evidence a letter, dated March 2, 1953, from the plaintiff reading in part, "I am writing you on [*sic*] regards to a settlement that you and I were talking about the last time that you were here. I am ready to make a settlement for four months pay and I will not return to the Railroad . . . . If this agreement is agreeable with you drop me a line and I will sign all papers that will have to be taken care of."

1. Federal law, and not the law of Massachusetts, applies to the issue under the act whether the evidence warrants a finding that the defendant was negligent. *Labonte* v. *New York, N. H. & H. R.R.* 333 Mass. 420, 421–422, cert. den. 351 U. S. 974. *Ellis* v. *Union Pac. R.R.* 329 U. S. 649, 653. *Rogers* v. *Missouri Pac. R.R.* 352 U. S. 500, 507, note 13. Federal law also controls the determination whether the release of liability under the act is valid. *Dice* v. *Akron, C. & Y. R.R.* 342 U. S. 359, 361–364. See *South Buffalo Ry.* v. *Ahern*, 344 U. S. 367, 372. See also *McCarthy* v. *New York, N. H. & H. R.R.* 285 Mass. 211, 215.

2. The subsidiary findings of the auditor would warrant a jury in finding that the defendant was chargeable with negligence under the act. "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. . . . The statute expressly imposes liability upon the employer to pay damages for injury or death due 'in whole or *in part*' to its negligence". *Rogers* v. *Missouri Pac. R.R.* 352 U. S. 500, 506–507. 45 U. S. C. (1952) § 51. The act expressly makes the employer liable, to persons entitled to benefits of the act, for the negligent

acts of fellow employees (*Hietala* v. *Boston & Albany R.R.* 295 Mass. 186, 187–188, cert. den. sub nom. *Boston & Albany R.R.* v. *Hietala*, 299 U. S. 589). Recent decisions of a majority of the Supreme Court have held that, under this act, very slight evidence, from which negligence might conceivably be inferred, requires the submission of the case to a jury. *Webb* v. *Illinois Cent. R.R.* 352 U. S. 512. *Herdman* v. *Pennsylvania R.R.* 352 U. S. 518. *Moore* v. *Terminal R.R. Assn. of St. Louis*, 358 U. S. 31, 34. See *Rogers* v. *Missouri Pac. R.R.*, *supra*, at pp. 503–504; *McBride* v. *Toledo Terminal R.R.* 354 U. S. 517; *Ringhiser* v. *Chesapeake & O. Ry.* 354 U. S. 901. See also *Arnold* v. *Panhandle & S. F. Ry.* 353 U. S. 360; and cases collected in *Sinkler* v. *Missouri Pac. R.R.* 356 U. S. 326, 332–333, note 1.

The presence of a newly dug hole (six inches deep and twelve inches square) in a railroad yard, where minor changes in conditions and slight irregularities in ground surface might well be expected, by itself hardly seems sufficient basis for a finding that the railroad provided the plaintiff with an unsafe place to work. *Labonte* v. *New York, N. H. & H. R.R.* 333 Mass. 420, 424, cert. den. 351 U. S. 974. The jury, however, would have been warranted in finding that the sudden dropping, without warning and despite the plaintiff's instructions to his coworkers, of one end of the rail was negligent conduct for which the defendant was responsible under the act. See *McCurry* v. *Thompson*, 352 Mo. 1199, 1204–1206; *Cules* v. *Northern Pac. Ry.* 105 Wash. 281, 285. See also *New York Cent. R.R.* v. *Marcone*, 281 U. S. 345, 349–350. This conduct could be found to have caused the plaintiff to jump to avoid being hit, without opportunity to select his landing place carefully. See *Kane* v. *Worcester Consol. St. Ry.* 182 Mass. 201, 202; *Rollins* v. *Boston & Maine R.R.* 321 Mass. 586, 589; *Holmes* v. *New York Cent. R.R.* 330 Mass. 155, 160; *Chicago Great West. Ry.* v. *Scovel*, 232 F. 2d 952, 957 (8th Cir.), cert. den. 352 U. S. 835; Prosser, Torts (2d ed.) 137–138; Harper and James, Torts, § 16.11. See also *Rogers* v. *Missouri Pac. R.R.* 352 U. S. 500, 502–504.

3. The defendant pleads in its answer that the plaintiff is barred from recovery by his general release dated March 20, 1953, which the auditor found that the plaintiff signed. This finding was not contradicted by other evidence. The plaintiff contends, however, that there was evidence upon the basis of which (under the Federal decisions) the jury would have been warranted in finding that the circumstances were such as to enable the plaintiff to avoid the release. See *Shaw* v. *Victoria Coach Line, Inc.* 314 Mass. 262, 264.

The pertinent findings of the auditor with respect to the release were as follows: (1) Weekly payments of $100 each were made to the plaintiff, over a period of twelve weeks. A $300 payment was made on March 1, 1953. The claim adjuster "told the plaintiff that he was paying him the wages which he would have earned if . . . employed" and the plaintiff believed this. (2) The claim agent "represented" that a payment of $900 to the plaintiff, made on March 20, 1953, when the general release was signed, "was likewise for additional wages." The plaintiff was "not aware that he was signing a release of all claims." (3) "At the time that the plaintiff signed this release, he believed that it was for back wages due to him." (4) The plaintiff then "was not aware of the extent or nature of his injuries . . . nor did the defendant's physician who attended him at that time tell him to what extent . . . the plaintiff was injured." (5) "On the day that the plaintiff signed the release he did not read" it and he "was under the influence of intoxicating liquor." (6) The plaintiff underwent substantial medical treatment after March 20, 1953, for spinal injuries, the true nature of which appears to have been diagnosed in June or July, 1954. The auditor found that, in addition to the aggregate of $2,400, in fact paid, the plaintiff should receive $10,000. As the validity of the release must be determined under Federal law, we do not consider, and express no opinion, whether the release could have been disregarded under our Massachusetts decisions.[1]

[1] See cases collected in *Tupper* v. *Hancock,* 319 Mass. 105, 107–108, and *Century Plastic Corp.* v. *Tupper Corp.* 333 Mass. 531, 533–535; *Abrain* v.

The Supreme Court has stated that, even under § 5 of the act (45 U. S. C. [1952] § 55), "the releases of railroad employees stand on the same basis as the releases of others. One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted." *Callen* v. *Pennsylvania R.R.* 332 U. S. 625, 630. In *Dice* v. *Akron, C. & Y. R.R.* 342 U. S. 359, 362, it was said that "a release of rights under the Act is void when the employee is induced to sign it by the deliberately false and material statements of the railroad's authorized representatives made to deceive the employee as to the contents of the release." See *South Buffalo Ry.* v. *Ahern,* 344 U. S. 367, 372–373.

The decisions of certain of the Federal courts of appeals apply much less definite standards for determining whether releases may be avoided for fraud than are expressed in the Supreme Court's opinions in the *Callen* case and the *Dice* case. See *Graham* v. *Atchison, T. & S. F. Ry.* 176 F. 2d 819, 826 (9th Cir.), where the court suggests that even "an innocent misrepresentation" would be "ground for voiding a release induced by it"; *Purvis* v. *Pennsylvania R.R.* 198 F. 2d 631, 633 (3d Cir.); *Camerlin* v. *New York Cent. R.R.* 199 F. 2d 698, 701–702, 703–704 (1st Cir.); *Marshall* v. *New York Cent. R.R.* 218 F. 2d 900, 905–906 (7th Cir.). See also cases, where there was apparently evidence of affirmative misrepresentations by the defendant, like *Brown* v. *Pennsylvania R.R.* 158 F. 2d 795, 796 (2d Cir.), and the somewhat analogous decisions like *Irish* v. *Central Vt. Ry.* 164 F. 2d 837, 839–840 (2d Cir.), and *Gifford* v. *Wichita Falls & S. Ry.* 211 F. 2d 494, 496–497 (5th Cir.). The cases just cited, because of the vagueness of the standard which they state,

---

*Pereira,* 336 Mass. 460, 462. See also *Griffin* v. *New York, N. H. & H. R.R.* 279 Mass. 511, 515; *Barletta* v. *New York, N. H. & H. R.R.* 297 Mass. 275, 278. For cases dealing with avoidance of a release, where affirmative misrepresentations were involved, see *Bliss* v. *New York Cent. & H. R. R.R.* 160 Mass. 447, 448, 454; *Shaw* v. *Victoria Coach Line, Inc.* 314 Mass. 262, 267; *King* v. *Motor Mart Garage Co.* 336 Mass. 422, 426. See as to mutual mistake *Tewksbury* v. *Fellsway Laundry, Inc.* 319 Mass. 386, 388.

provide an unsatisfactory guide for action with respect to avoiding releases for fraud. Accordingly, we propose to adhere to the plain language of the standards already quoted from the Supreme Court's decisions in the *Callen* case (332 U. S. 625, 630) and the *Dice* case (342 U. S. 359, 362) until and unless, by authoritative rulings of the Supreme Court, those standards are altered.

The auditor's findings comprise the principal evidence placed before the jury. Because of the introduction at the jury trial of certain correspondence, releases, and other documentary material, the findings on the issue of fraud are deprived of the "compelling" effect which they might otherwise have under the principles stated in *Cook* v. *Farm Serv. Stores, Inc.* 301 Mass. 564, 566–567. See *Ball* v. *Williamson,* 336 Mass. 547, 551; *Institute for Maintaining Drycleaning Standards Model Plant, Inc.* v. *Wm. Filene's Sons Co.* 336 Mass. 573, 574; G. L. c. 221, § 56; Rule 88 of the Superior Court (1954). Compare *Salter* v. *Leventhal,* 337 Mass. 679, 696–697.

Examination of the findings reveals that, on the issue of fraud, they are incomplete and indefinite in respects in which positive and clear findings should have been made one way or another. There was no explicit finding whether the claim agent misrepresented that the general release was only a receipt for wages. The auditor did find that the claim agent represented that the several payments were for wages, but the significance of this is uncertain in view of the plaintiff's letter of March 2, 1953. That letter gives at least strong basis for an inference that, several days prior to the signing of the release, the parties had been discussing settlement in terms of a payment equivalent to a certain number of months' wages. A jury could not reasonably infer, upon the basis of (a) the statement that the payments were for wages, and (b) the finding that the plaintiff "believed" that the release "was for back wages," that the claim agent made any separate affirmative representation about the contents of the release. If the auditor concluded that any such representation had been made, he should have said so clearly.

The auditor also makes no express findings that the claim agent intended to deceive the plaintiff by his statement that the payments were for wages, or that he knew or should have known that the plaintiff was intoxicated, or that he knew or had reasonable cause to believe that his statement, even if innocent, would be interpreted as meaning that the release also dealt only with wages. There is no finding about the extent to which the plaintiff was "under the influence of intoxicating liquor."

The fact, if found, that the plaintiff was drunk or seriously intoxicated would be, like impairment of mental faculties, "a factor . . . to be considered in determining whether he has been imposed upon by the fraudulent representations of another." See *Shaw* v. *Victoria Coach Line, Inc.* 314 Mass. 262, 266–269; *Bowman* v. *Illinois Cent. R.R.* 11 Ill. 2d 186, 202–203, 205–211. So, under the Federal cases, would be the finding that the plaintiff did not read the release (if that finding be believed despite the plaintiff's written statements to the contrary). See *Marshall* v. *New York Cent. R.R.* 218 F. 2d 900, 903–904 (7th Cir.); *Humphrey* v. *Erie R.R.* 116 F. Supp. 660, 661, 663 (S. D. N. Y.). See also *Graham* v. *Atchison, T. & S. F. Ry.* 176 F. 2d 819, 826 (9th Cir.). Neither of these circumstances, however, even if accepted as true, would seem, standing alone, to be sufficient proof of fraud or ground for avoidance of the release. See *Shaw* v. *Victoria Coach Line, Inc.*, *supra*, at pp. 266–267.

Fraud, of course, is not to be presumed. See *Stow* v. *Commissioner of Corps. & Taxn.* 336 Mass. 337, 341. In the light of this principle, it would be hard to view as warranted a finding that the release was procured by "deliberately false and material statements . . . made to deceive" (see *Dice* case, 342 U. S. 359, 362) without an unduly elastic construction of the auditor's equivocal findings and without permitting unreasonable inferences from those findings. Accordingly, we rest upon another ground our decision that it was incorrect to direct a verdict for the defendant.

The record does contain findings which might give rise,

under the Federal cases discussing the act (cf. however, *Tewksbury* v. *Fellsway Laundry, Inc.* 319 Mass. 386, 388, *infra*), to an inference that there was a mutual mistake of fact about the extent of the plaintiff's injuries when the release was signed on March 20, 1953. The plaintiff was then under the care of "the defendant's physician" (see *Humphrey* v. *Erie R.R.* 116 F. Supp. 660, 663 [S. D. N. Y.]) who did not "tell him to what extent" he was injured. See *Graham* v. *Atchison, T. & S. F. Ry.* 176 F. 2d 819, 825 (9th Cir.). Serious injuries were discovered thereafter which were apparently regarded as related to the accident. The settlement made could be found to have been small in relation to the seriousness of the injury as it finally developed. See *Bowman* v. *Illinois Cent. R.R.* 11 Ill. 2d 186, 210.

In *Callen* v. *Pennsylvania R.R.* 332 U. S. 625, 627–629, the issue whether a release was executed in mutual ignorance of the permanency of an injury was held to be for the jury and it was assumed that, in circumstances similar to those here present, there might be found to be a mutual mistake. Other Federal cases recognize that a mutual mistake about the extent of injuries is ground for avoiding a release under the act. *Graham* v. *Atchison, T. & S. F. Ry.* 176 F. 2d 819, 821–825 (9th Cir.); *Chicago & N. W. Ry.* v. *Curl*, 178 F. 2d 497, 501–502 (8th Cir.); *Humphrey* v. *Erie R.R.* 116 F. Supp. 660, 665–666 (S. D. N. Y.); *Cleghorn* v. *Terminal R.R. Assn. of St. Louis*, 289 S. W. 2d 13, 21–22 (Supr. Ct. Mo. 1956). Cf. the different rule in Massachusetts found in *Tewksbury* v. *Fellsway Laundry, Inc.* 319 Mass. 386, 388, where Dolan, J., speaking for the court said, "It is settled in this Commonwealth that one who executes a release for consideration for the injuries then known cannot, on the subsequent discovery of injuries not known or suspected at the time of settlement, obtain a cancellation of the release on the ground of mutual mistake, and that the release is binding in the absence of fraud or concealment." The Federal decisions, of course, are applicable here.

The auditor's subsidiary findings affecting the issue of mistake are general and provide only slight basis for concluding

that there was in fact any mutual mistake, but we cannot say that a jury could not infer (a) that the defendant and the plaintiff did not know on March 20 the true extent of the injuries, (b) that the plaintiff and the defendant regarded the injuries as less serious than they turned out to be, and (c) that the parties made their settlement based upon a misapprehension of the extent of the injuries. The auditor might well have made subsidiary findings on these matters, but we think that these inferences were permissible on the findings in fact made by him. Although the plaintiff in his brief made no more than passing reference to the facts which might show mutual mistake, this ground for avoidance of the release was open on the auditor's findings and under the Federal cases relating to mutual mistake. Accordingly, in the opinion of a majority of the court, it was error to direct a verdict for the defendant.

4. We have noted above various respects in which the auditor's report should have been more specific and informative. The purpose of such a report is to clarify difficult issues for the jury. The present case is clearly an instance in which recommittal of the report to the auditor for clarification and amplification of the findings would be within the discretion of a judge of the Superior Court, before submitting the case to another jury. See *W. R. Grace & Co.* v. *National Wholesale Grocery Co. Inc.* 251 Mass. 251, 253; *J. W. Grady Co.* v. *Herrick*, 288 Mass. 304, 310; *Staples Coal Co.* v. *Ucello*, 333 Mass. 464, 467. See also *Lombardi* v. *Bailey*, 336 Mass. 587, 595–596.

*Exceptions sustained.*