AIME LABONTE *vs.* THE NEW YORK, NEW HAVEN AND
HARTFORD RAILROAD COMPANY.

Suffolk.    April 7, 1960. — June 3, 1960.

Present: WILKINS, C.J., SPALDING, COUNIHAN, WHITTEMORE,
& CUTTER, JJ.

*Estoppel. Limitations, Statute of. Conflict of Laws. Federal Law.
Negligence,* Employer's liability: heavy object, loading, Federal Employers' Liability Act, fellow employee; Heavy object; Loading.

Federal law governed determination of the issue whether a railroad was
estopped from invoking the statute of limitations in an action against
it in a State court under the Federal Employers' Liability Act.    [130]

In the absence of a decision by the Supreme Court of the United States
on a Federal question, this court considered lower Federal court decisions and its own decisions.    [130]

In an action under the Federal Employers' Liability Act commenced
against a railroad by an employee nearly five years after he sustained
an injury resulting in amputation of his leg, a finding that the defendant
was estopped from setting up the three year statute of limitations as a
defence was warranted by evidence that two years after the injury the
defendant's district claim manager, in response to a statement by the
plaintiff that he desired to make a claim, told the plaintiff "Your best
bet is with the retirement [pension] . . . not to worry about the injury
. . . the railroad will take care of it," that, after the plaintiff had consulted a lawyer with regard to making a claim and about three months
before the running of the statute, the manager visited the plaintiff and
told him that he "shouldn't have" consulted the lawyer, the railroad was
"going to take care" of the claim and "in a case as serious as that it
would take a little while for the railroad to settle things . . . he would
have to look into it again, he would be around the area again . . . [at a
time after the running of the statute and] would drop in and let . . .
[the plaintiff] know," and that thereafter the plaintiff never saw the
manager nor communicated with that lawyer except to tell him of the
manager's visit.    [131–132]

A finding of negligence on the part of a railroad toward a "maintenance
man" under the Federal Employers' Liability Act was warranted by
evidence that, while he was on a truck guiding with a pair of tongs the
loading of cross ties heaved onto the truck on his signal by two fellow
workers, they heaved a tie onto the truck without any signal from or
warning to him and it struck and injured him before he "had a chance
to grab it and pull it in."    [132]

TORT. Writ in the Superior Court dated April 8, 1957. The action was tried before *Macaulay*, J.

*Noel W. Deering*, (*David W. Walsh* with him,) for the defendant.

*Roger J. Donahue*, for the plaintiff.

SPALDING, J. In this action of tort under the Federal Employers' Liability Act (FELA), 45 U. S. C. (1946) § 51 et seq., the plaintiff had a verdict. The questions for decision arise out of the defendant's exception to the denial of its motion for a directed verdict.

We summarize the evidence as follows. On May 9, 1952, the plaintiff, a "maintenance man," was operating a truck for the defendant at Saundersville on the Providence-Worcester line.[1] His duties on that day included the loading of cross ties onto the truck with the help of two fellow employees. The plaintiff worked from the truck and the coworkers from the ground. The ties were about "eight inches square and eight feet long" and weighed between two and three hundred pounds. The helpers would place one end of a tie on the tailboard of the truck and the plaintiff "would look around to see where . . . [he] could place the tie," and, on his signal, the helpers would heave the tie into the truck; the plaintiff, by grabbing the end of the tie coming toward him with a pair of tongs, would guide it to a place on the floor of the truck.

On one occasion, no signal to heave having been given by the plaintiff, the helpers heaved a tie onto the truck before the plaintiff "had a chance to grab it and pull it in," and it struck the plaintiff on the shin of his right leg. The shin appeared to be bruised and cut a little, but after self administered first aid the plaintiff resumed working for the remainder of the day. Although the cut healed within a few days, the injured area remained black and blue and swollen. As time went on his shin became increasingly painful and after July 17, 1953, the pain was such that the plaintiff could not do any work, and he consulted his physi-

---

[1] It was agreed that at the time of the alleged accident the plaintiff was "engaged in interstate commerce."

cian. In August, 1953, an operation was performed on his shin but thereafter his leg continued to swell, and in February, 1954, it became necessary to amputate it above the knee.

In June, 1954, the plaintiff called at the defendant's office in Providence and talked to one Murtaugh, the defendant's district claim manager. As to what was said at this conversation the evidence is in sharp conflict. According to the plaintiff's version he told Murtaugh that he desired to make a claim for the injury to his right leg. Murtaugh said, "Your best bet is with the retirement [pension]." Murtaugh further told the plaintiff "not to worry about the injury . . . that the railroad will take care of it."

About July 30, 1954, the plaintiff consulted a lawyer (Mr. Harry Smith) and "asked him to look into making a claim, to the railroad." In February of 1955 Murtaugh called on the plaintiff at his home. Here again the evidence was conflicting, but according to the plaintiff's version the following occurred: Murtaugh asked the plaintiff how he was getting along and the plaintiff told him that he had consulted a lawyer. Murtaugh told the plaintiff that he "shouldn't have done that; they were going to take care of . . . [the claim] themselves." The plaintiff then asked Murtaugh when he would hear from him and Murtaugh said that "in a case as serious as that it would take a little while for the railroad to settle things . . . he would have to look into it again, he would be around the area again in June . . . [and] would drop in and let us know." The plaintiff never saw Murtaugh thereafter. Shortly after this conversation with Murtaugh the plaintiff told Mr. Smith, his attorney, of Murtaugh's visit; the plaintiff never communicated again with his attorney. The present action was commenced by a writ dated April 8, 1957, five years, lacking one month, after the plaintiff's injury.

The defendant argues that it was entitled to a directed verdict in its favor because (1) the plaintiff's action was not seasonably commenced, and (2) the evidence would not warrant a finding that it was negligent.

1. The Federal Employers' Liability Act (45 U. S. C. [1946] § 56) provides, "No action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued." The plaintiff's cause of action accrued on May 9, 1952, the date of the injury, and he did not institute proceedings within this limitation. The plaintiff argues, however, that the defendant's conduct was such that it is estopped to invoke the limitation. Whatever the rule may have been formerly, it has recently been settled that there may be circumstances in which a defendant is "estopped" to set up the statute. *Glus* v. *Brooklyn E. Dist. Terminal,* 359 U. S. 231. The *Glus* case, however, did not undertake to lay down any principles of law with respect to estoppel.

It has been held that the validity of a release in FELA cases is to be determined by Federal law. *Dice* v. *Akron, C. & Y. R.R.* 342 U. S. 359, 361–364. *Rankin* v. *New York, N. H. & H. R.R.* 338 Mass. 178, 181. The reasoning in the *Dice* case is no less applicable to a case involving the avoidance of the statute of limitations on grounds of estoppel. Accordingly, we are of opinion that this issue is to be controlled by Federal law. See *Scarborough* v. *Atlantic Coast Line R.R.* 202 F. 2d 84, 87 (4th Cir.); *Osbourne* v. *United States,* 164 F. 2d 767, 768 (2d Cir.). There appear to be no decisions of the Supreme Court that shed any light on estoppel in FELA cases, and not very much law has thus far been developed by the lower Federal courts. See *Scarborough* v. *Atlantic Coast Line R.R.* 190 F. 2d 935 (4th Cir.); *Scarborough* v. *Atlantic Coast Line R.R.* 202 F. 2d 84 (4th Cir.). Since the Supreme Court has not spoken on this subject, we are obliged to decide the question as we think that court would decide it. In so doing we shall give respectful consideration to such lower Federal court decisions as seem persuasive. See *Lapp Insulator Co. Inc.* v. *Boston & Maine R.R.* 330 Mass. 205, 209. And we shall also be guided by our own decisions, for we have no reason to believe that on this subject, involving, as it does, fundamental

principles of fair dealing and good conscience, our law would be substantially different.[1]

Basically the ground relied on by the plaintiff to avoid the statute of limitations, whether described as waiver of the defence or estoppel (see concurring opinion of Magruder, J., in *Bergeron* v. *Mansour,* 152 F. 2d 27, 32 et seq. [1st Cir.]), is that "the statements of the defendant lulled the plaintiff into the false belief that it was not necessary for him to commence action within the statutory period of limitations . . . , that the plaintiff was induced by these statements to refrain from bringing suit, as otherwise he would have done, and was thereby harmed, and that the defendant 'knew or had reasonable cause to know that such consequence might follow.' " *Ford* v. *Rogovin,* 289 Mass. 549, 552. It was said in *McLearn* v. *Hill,* 276 Mass. 519, at page 527, that "Proof of fraud in its strict sense is not essential to estoppel. The more modern statement is that 'one is responsible for the word or act which he knows, or ought to know, will be acted upon by another.' " But as we said in *Knight* v. *Lawrence,* 331 Mass. 293, 295, "the words or conduct [which estop one from invoking the statute of limitations] must be such that a reasonable man would rely thereon."

It may be seriously doubted whether the representations made on the first visit would be sufficient to operate as an estoppel, having in mind that they were made nearly a year before the statute had run. See *Ford* v. *Rogovin,* 289 Mass. 549, 553; *Knight* v. *Lawrence,* 331 Mass. 293, 297. But these representations coupled with those of the second visit, made about three months before the running of the statute, were, we think, sufficient to present an issue of fact for the jury. It is to be noted that on the second visit Murtaugh stated that the case was a serious one which would "take a

[1] Cases of this court which have dealt with tolling of statutes of limitations on the ground of estoppel are *Webber* v. *Williams College,* 23 Pick. 302, *McLearn* v. *Hill,* 276 Mass. 519, *Ford* v. *Rogovin,* 289 Mass. 549, *Hayes* v. *Gessner,* 315 Mass. 366, 368, *Knight* v. *Lawrence,* 331 Mass. 293, and *MacKeen* v. *Kasinskas,* 333 Mass. 695, 696. See *Bergeron* v. *Mansour,* 152 F. 2d 27 (1st Cir.) (diversity case applying Massachusetts law).

LaBonte *v.* New York, New Haven & Hartford Railroad.

little while'' to investigate and he would see the plaintiff again in June, a time after the statute would have run. The plaintiff's case on the estoppel issue is considerably weakened by the fact that between the first and second conversation with Murtaugh the plaintiff consulted an attorney. However, the plaintiff might well have concluded, and it was open to the jury to find, that, in view of Murtaugh's statement on the second conference to the effect that the plaintiff ought not to have consulted a lawyer, and that the railroad would take care of the claim, the plaintiff thereafter deemed that further legal advice was not necessary. It appears that, except for a brief telephone conversation with his attorney about two weeks later in which ''he said he was going to do nothing about . . . [the claim],'' the plaintiff never again consulted his attorney respecting the case.

2. It remains to consider whether there was a case for the jury on the issue of negligence. As we observed recently in *Rankin* v. *New York, N. H. & H. R.R.* 338 Mass. 178, 182, ''Recent decisions of a majority of the Supreme Court have held that, under . . . [FELA], very slight evidence, from which negligence might conceivably be inferred, requires the submission of the case to a jury.'' Typical of such cases are *Rogers* v. *Missouri Pac. R.R.* 352 U. S. 500, *Webbe* v. *Illinois Cent. R.R.* 352 U. S. 512, and *Herdman* v. *Pennsylvania R.R.* 352 U. S. 518.

The jury could have found that the plaintiff's helpers heaved the railroad tie into the truck without waiting for his signal and without warning, and that in so doing they failed to act in accordance with customary loading procedure. Under FELA, the defendant was answerable to the plaintiff for the negligence of his coworkers. The case at bar is governed by the *Rankin* case (*supra*) where we held on somewhat similar facts that there was a case for the jury.

*Exceptions overruled.*